## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABBEY HOTEL ACQUISITION, LLC, SETAI HOTEL ACQUISITION, LLC, SETAI RESORT AND RESIDENCE CONDOMINIUM ASSOCIATION, INC, and SETAI VALET SERVICES, LLC<br>          Plaintiffs,<br><br>v.<br><br>NATIONAL SURETY CORPORATION,<br>          Defendant. | Civil Action No.: |

## NOTICE OF REMOVAL

Defendant National Surety Corporation by and through their undersigned counsel, DLA Piper LLP (US), respectfully submits as follows:

1.      On January 28, 2021 the above-captioned plaintiffs (collectively, "Plaintiffs") commenced this action by filing a Complaint (a true and correct copy of which is attached hereto as Exhibit A) in the Supreme Court of the State of New York, County of New York, Index No. 650651/2021. The Complaint alleges that the City of Miami issued executive orders related to COVID-19 that required Plaintiffs' businesses to close to in-person customers. Plaintiffs allege they suffered harm as a result of the partial closure that is covered by the insurance policies issued by National Surety.

2.      Plaintiffs have named National Surety as the Defendant in this matter.

3.      The document attached as Exhibits A (complaint) and B (notice of service) constitute all process, pleadings, and orders filed in state court. No hearings or other proceeding have taken place in this action to National Surety's knowledge.

4.      Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, this Notice of Removal is being timely filed because National Surety did not receive a copy of the relevant complaint until April 19, 2021.  Removal must be effectuated "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading." 28 U.S.C. § 1446.

      a.   Although the Plaintiffs purportedly served the complaint on the Department of Financial Services on February 5, 2021, *see* Ex. B, to Defendant's knowledge, the documents were never transmitted to National Surety.

5.      Venue is proper in the Southern District of New York because the New York County Supreme Court where the action is pending is within the jurisdictional confines of the District. *See* 28 U.S.C. § 1446(a).

6.      In filing this Notice of Removal, National Surety does not waive any defenses. No admission of fact, law, or liability is intended by this Notice of Removal.

### DIVERSITY OF CITIZENSHIP

7.      There is complete diversity among between National Surety and Plaintiffs.

8.      Plaintiffs are three limited liability companies and one corporation:

      a.   On information and belief, Abbey Hotel Acquisition, LLC is a Delaware company with its business location at 300 21st Street, Miami Beach, Florida, 33138. On information and belief, Abbey Hotel is owned and managed by Robert Spiegelman and Salem Mounayyer, both New York residents.

      b.   On information and belief, Setai Hotel Acquisition, LLC is a Florida corporation with its principal address at 2001 Collins Avenue, Miami, Florida, 33139. On information and belief, Setai Hotel Acquisition, LLC, is

also owned and managed by Robert Spiegelman and Salem Mounayyer, both New York residents.

c. On information and belief, Setai Resort and Residence Condominium Association, Inc. is a Florida corporation with its principal place of business located at 2301 Collins Ave, Miami Beach, Florida, 33139.

d. On information and belief, Setai Valet Services, LLC is a Florida company with its principal place of business at 101 20th St, Miami Beach, Florida, 33139. It is wholly owned by Setai Hotel Acquisition LLC, *supra*.

9.   Accordingly, on information and belief, every Plaintiff is a citizen of State of New York or the State of Florida.

10.   National Surety is a corporation organized under the laws of the State of Illinois with its principal place of business in Illinois now and at the time the Complaint was filed.

11.   Thus, complete diversity of citizenship exists because the Plaintiffs are citizens of New York and Florida, and National Surety is a citizen of Illinois.

**AMOUNT IN CONTROVERSY**

12.   In its Complaint, the Plaintiffs assert that they are seeking damages arising from insurance contracts. Specifically, the Complaint alleges damages under provisions providing (1) over $158 million in coverage, (2) $10 million "for each loss" and (3) $2 million in "Civil Authority Coverage." *See* Complaint ¶¶ 43–44. The complaint alleges loss "in the amount of $3,378,572.00" Complaint ¶ 49.

13.   Although National Surety denies any liability to Plaintiffs, it is apparent that based on the claims asserted in this case and the relief sought, the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

3

14.     Therefore, this is a civil action between citizens of different states, with complete diversity, where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, of which the United States District Courts have original jurisdiction, pursuant to 28 U.S.C. § 1332. Accordingly, this entire action may be removed to this Court pursuant to 28 U.S.C. § 1441.

15.     Upon the filing of this Notice of Removal, National Surety shall promptly give written notice of this removal to Plaintiffs' attorney and shall file a copy of this Notice of Removal with the Clerk of the Supreme Court of New York, pursuant to 28 U.S.C. § 1446(d). National Surety demands trial by jury.

**WHEREFORE**, Defendant National Surety respectfully requests that the state court action pending in the Supreme Court of New York, County of New York be removed therefrom in its entirety to this Court, as provided by law, and pursuant to 28 U.S.C. § 1446(d), and that the Supreme Court of New York, County of New York proceed no further unless and until this case is remanded.

Respectfully submitted,

Dated: April 20, 2021

*s/ Michael D. Hynes*
Michael D. Hynes

**DLA PIPER LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, NY 10020
Tel:     (212) 335-4942
Fax:     (973) 520-2551
michael.hynes@dlapiper.com

*Attorney for Defendant*
*National Surety Corp.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent by First Class Mail

to the following counsel of record on this 20th day of April 2021:

Dennis T. D'Antonio

Federal Plaza

52 Duane Street, 2nd Floor

New York, NY 10007

Dated: April 20, 2021                    By:     _/s/ Michael D. Hynes_____

Michael D. Hynes
*Counsel for Defendant*
*National Surety Corp.*

# Exhibit A

20-124

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------------

| | | |
|---|---|---|
| ABBEY HOTEL ACQUISITION, LLC, | : | Index No.: |
| SETAI HOTEL ACQUISITION LLC, SETAI | : | |
| RESORT & RESIDENCE CONDOMINIUM | : | **SUMMONS** |
| ASSOCIATION, INC, and SETAI | : | |
| VALET SERVICES, LLC, | : | Plaintiff hereby designates |
| | : | New York County as the |
| Plaintiffs, | : | place of trial. |
| | : | |
| -against- | : | Basis of venue is Plaintiffs' |
| | : | principal place of business: |
| NATIONAL SURETY CORPORATION, | : | 1400 Broadway |
| | : | New York, New York |
| Defendant. | : | |

-----------------------------------------------------------------------

To the above-named Defendant(s):

      **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
     January 27, 2021

Defendant's address:

225 W. Washington Street, Suite 1800
Schaumberg, IL 60196

**WEG AND MYERS, P.C.**
*Attorneys for Plaintiff*
Federal Plaza
52 Duane Street, 2nd Floor
New York, New York 10007
(212) 227-4210

1

Case 1:21-cv-03506   Document 1   Filed 04/20/21   Page 8 of 24

20-124

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------

ABBEY HOTEL ACQUISITION, LLC,                    :      Index No.:
SETAI HOTEL ACQUISITION LLC, SETAI               :
RESORT & RESIDENCE CONDOMINIUM                   :      **COMPLAINT**
ASSOCIATION, INC, and SETAI                      :
VALET SERVICES, LLC,                             :
                                                 :
                              Plaintiffs,        :
                                                 :
                 -against-                       :
                                                 :
NATIONAL SURETY CORPORATION,                     :
                                                 :
                              Defendant.         :
-------------------------------------------------------------------

 

Plaintiffs ABBEY HOTEL ACQUISITION, LLC, SETAI HOTEL ACQUISITION LLC,

SETAI RESORT & RESIDENCE CONDOMINIUM ASSOCIATION, INC, and SETAI VALET

SERVICES, LLC, (hereinafter collectively "Plaintiffs") by their attorneys, Weg & Myers, P.C., as

and for their complaint against Defendant, NATIONAL SURETY CORPORATION (hereinafter

"Defendant") respectfully alleges as follows:


## INTRODUCTION

1.     Plaintiff Abbey Hotel Acquisition, LLC ("Setai"), is the owner and operator of the

world-famous Setai Hotel.

2.     The Setai Hotel in Miami Beach, Florida is an award- winning, international leader

in hospitality and the hotel of choice for the sophisticated international traveler, which masterfully

combines the warmth of Asian hospitality with the best in personalized service and truly rarified comfort.

3.      Among its amenities, the Setai Hotel offers two distinct dining experiences and luxury spa services.

4.      These and other hotel-related amenities are offered by Setai, as well as by and through its affiliated and subsidiary entities, which have made significant investments therein.

5.      Plaintiffs procured a policy of insurance with Defendant National Surety Corporation ("National Surety") which was in full force and effect when the Covid-19 pandemic struck the United States.

6.      The effect of this pandemic was to cause physical loss and damage to high volume commercial retail business throughout the United States.

7.      In response to the damage being inflicted and to protect the public from further exposure to infected areas, many states and municipalities issued "stay at home" orders which prohibited Plaintiffs from continuing their business operations.

8.      Due to the fact that Plaintiffs had purchased an all-encompassing all-risk policy of insurance from National Surety which did not contain any specific relevant exclusions, Plaintiffs expected that National Surety, after collecting annual premiums from Plaintiffs would be responsive to its insureds during their time of need.

9.      Unfortunately, these expectations were never met.

10.     National Surety's conduct compelled Plaintiffs to commence this litigation in order to force National Surety to live up to its contractual obligations and indemnify Plaintiffs for their losses.

## THE PARTIES

11.     At all relevant times ABBEY HOTEL ACQUISITIONS, LLC, was and is a foreign limited liability company, duly organized and existing under and by virtue of the laws of Delaware, having its principal place of business at 1400 Broadway, New York, New York.

12.     At all relevant times SETAI HOTEL ACQUISITIONS LLC was and is a foreign limited liability company duly organized and existing under and by virtue of the laws of Delaware, having its principal place of business at 1400 Broadway, New York, New York.

13.     At all relevant times SETAI RESORT & RESIDENCE CONDOMINIUM ASSOCIATION, INC was and is a foreign corporation duly organized and existing under and by virtue of the laws of Florida, having its principal place of business at 1400 Broadway, New York, New York.

14.     At all relevant times SETAI VALET SERVICES, LLC was and is a foreign partnership duly organized and existing under and by virtue of the laws of Florida, having its principal place of business at 1400 Broadway, New York, New York.

15.     At all relevant times National Surety was a foreign corporation organized and existing under and by virtue of the laws of the State of Illinois, having its principal place of business at 225 W. Washington Street, Suite 1800, Chicago, Illinois.

## THE NOVEL CORONAVIRUS AND ITS EFFECTS

16.     It is beyond cavil that the world is currently experiencing a global pandemic from a disease caused by a novel coronavirus (specifically, SARS-COV-2) and commonly referred to as Covid-19.

17.     From as early as December 2019, Covid-19 began spreading, first in China and then, because the disease is highly contagious, rapidly around the globe.

3

18. The first confirmed case of the virus outside China was diagnosed on January 13, 2020 in Bangkok, Thailand with the number of cases exceedingly increasing around the world.

19. On January 30, 2020, the World Health Organization ("WHO") declared the Covid-19 outbreak constituted a public health emergency of international concern.

20. Not only is SARS-COV-2 transmitted via human-to-human, but the WHO and scientific studies have confirmed that the virus can remain infectious on objects or surfaces, and via airborne particulates.

21. According to a study documented in The New England Journal of Medicine, Covid-19 was detectable in aerosols for up to 3 hours, up to 4 hours on copper, up to 24 hours on cardboard, and up to 3 days on plastic and stainless steel.[1]

22. Indeed, scientific studies suggest that individuals could get Covid-19 through indirect contact with surfaces or objects used by an infected person, regardless of whether the infected person was symptomatic.

23. All of these materials are used and found throughout the Insureds' premises.

24. By February 25, 2020, the Center for Disease Control ("CDC") warned Americans that the world was on the brink of a global pandemic, effectively dismantling any notion that SARS-COV-2 would not affect Americans' lives.

25. From that point forward, Covid-19 and its damaging consequences received wide spread media attention.

26. As a result of this outbreak, the CDC began recommending that individuals stay at home and those who are not sick engage in preventative measures such as constant hand washing

---

[1] https://www.nejm.org/doi/full/10.1056/nejmc2004973

4

and the avoidance of activities that would bring them into close proximity of people or surfaces where the virus resides.

27.     Given the nature of the Plaintiffs' various businesses, the spread of Covid-19 virus led to significant economic damages.

28.     These damages resulted from damage to and within the Plaintiffs insured premises as well as from premises within the vicinity of the various insured locations.

29.     Such damage both existed on surfaces found within the insureds' premises and surrounding premises, as well as in the breathable air circulating within the insureds' premises and surrounding premises.

30.     In addition, human beings spread Covid-19 through the simple act of breathing in air that contains viral droplets. The New York Times recently reported that "[a]n infected person talking five minutes in a poorly ventilated space can also produce as many viral droplets as one infectious cough."[2]

31.     Moreover, studies have verified that many individuals remain asymptomatic despite infection by Covid-19.[3]

32.     Consequently, while it is possible to identify certain individuals who are suffering from obvious symptoms of the coronavirus, absent significant medical testing, it is impossible to distinguish between infected and non-infected members of the general public.

33.     In addition to a decrease in reservations and related income as a result of the desire of customers to avoid contracting the virus while visiting Plaintiffs' property, civil authority orders

---

[2] https://www.nytimes.com/interactive/2020/04/14/science/coronavirus-transmission-cough-6-feet-arul.html
[3] https://www.usnews.com/news/health-news/articles/2020-05-28/studies-detail-rates-of-asymptomatic-cases-of-coronavirus (observing that 42% of infected persons in Wuhan, China were asymptomatic).

5

began to be issued by Miami-Dade County and Florida state authorities, all of which require those properties to close their doors to the public or otherwise limit their services.

34.   MIAMI-DADE COUNTY EMERGENCY ORDER 09-20 (Amendment No. 1) provided:

> WHEREAS, Emergency Order 09-20 directed hotels, motels, and other commercial lodging establishments to stop accepting new reservations from persons other than Essential Lodgers, as defined by the Emergency Order; and

> WHEREAS, Emergency Order 09-20 further reduced the occupancy limitations on short-term vacation rentals and directed that new rental agreements for short-term vacation rentals not be on a nightly or weekly basis; and

> . . .

> WHEREAS, Miami-Dade County continues to see an influx of travelers and visitors staying in hotels and congregating without observing the social distancing guidelines recommended by the CDC; and

> . . .

> WHEREAS, reports suggest that people are traveling to Florida from areas with severe COVID-19 outbreaks to avoid lockdown orders in their area, which could lead to a further spread of COVID-19; and

> . . .

> THEREFORE, as County Mayor of Miami-Dade County, I hereby order:

> . . .

> Commencing March 26. 2020, hotel, motels, short-term vacation rentals, and other commercial lodging establishments shall not (i) accept any occupants. regardless of when reservations were made. or (ii) extend existing reservations for persons other than Essential Lodgers

35.   MIAMI-DADE COUNTY EMERGENCY ORDER 03-20 provided as follows:

6

WHEREAS, on March 1, 2020, the Governor of Florida issued Executive Order Number 20-51, directing the State Health Officer and Surgeon General to declare a Public Health Emergency due to the discove1y of COVID-19/novel Coronavirus in Florida; and

WHEREAS, on March 9, 2020, the Governor of Florida issued Executive Order Number 20-52, declaring a State of Emergency for the state of Florida related to COVID-19/novel Coronavirus; and

WHEREAS, on March 12, 2020, the County Mayor declared a State of Emergency for all of Miami-Dade County; and

WHEREAS, COVID-19/novel Coronavirus poses a health risk to Miami-Dade County residents, particularly elderly residents and those who are immunosuppressed or otherwise have high-risk medical conditions; and

WHEREAS, minimization of contact is necessary to avoid risk of COVID-19 infection for the residents of the County; and

WHEREAS, restaurants, bars, taverns, pubs, night clubs, banquet halls, cocktail lounges, cabarets, breweries, and cafeterias are potential gathering places for the spread of COVID-19/novel Coronavirus; and

. . .

WHEREAS, section 8B-7(2)(f) of the Code of Miami-Dade County authorizes the County Mayor to order the closure of any commercial establishment; and

. . .

THEREFORE, as County Mayor of Miami-Dade County, I hereby order:

1. All restaurants, bars, taverns, pubs, night clubs, banquet halls, cocktail lounges, cabarets, breweries, cafeterias, and any other alcohol and/or food service business establishment with seating for more than eight people within the incorporated and unincorporated areas of Miami-Dade County shall close on-premises service of customers.

7

36.     These orders were all predicated, in part, on the effect of the presence of Covid-19 within enclosed, highly trafficked locations.

37.     Pursuant to Emergency Order 30-20, Amendment No. 1, Plaintiffs' business operations were permitted to re-open to the general public on June 1, 2020.

## PLAINTIFFS' INSURANCE POLICY AND CLAIM

38.     This is an action for breach of insurance contract arising from the failure of National Surety to provide payment to Plaintiff for its losses resulting from the global pandemic commonly referred to as coronavirus or Covid-19 beginning on or about March 17, 2020.

39.     On or about April 27, 2019, for good and valuable consideration, Plaintiffs procured a policy of insurance from National Surety Corporation (the "Subject Policy") bearing policy number S 61 DXJ 80996603, a renewal of a prior policy bearing policy number S 61 DXJ 80987285.

40.     The Subject Policy provides coverage for, *inter alia*, physical loss or damage, as well as losses of income due to business interruption.

41.     The Subject Policy bears effective dates from April 27, 2019 to April 27, 2020.

42.     The Subject Policy was in full force and effect as of March 19, 2020 and for the period of time immediately thereafter.

43.     The Subject Policy provides coverage for all risks of physical loss or damage in the amount of $158,710,000.00, including but not limited to coverage for the loss of business income in the amount of $10,000,000.00 for each loss.

44.     The Subject Policy also provides, amongst other coverages $2 million in Civil Authority Coverage and 365 days of Extended Business and Extra Expense Coverage.

45.     The Subject Policy provides in relevant part:

8

### I.   Property Coverage

A.  If a Limit of Insurance for Business Real Property or Business Personal Property is shown in the Declarations, then we will pay for direct physical loss or damage to Property Insured while at a location, including such property in the open (or in a vehicle in the open) within 1,000 feet of such location, caused by or resulting from a covered cause of loss during the Policy Period.

. . .

### II.   Business Income and Extra Expense Coverage

A.  If a Limit of Insurance for Business Income and Extra Expense is shown in the Declarations, then we will pay for the actual loss of business income and necessary extra expense you sustain due to the necessary suspension of your operations during the period of restoration arising from direct physical loss or damage to property at a location, or within 1,000 feet of such location, caused by or resulting from a covered cause of loss.

41   The Subject Policy also includes Extensions of Coverage Applicable only to Business Income and Extra Expense, including in relevant part:

2. Civil Authority Coverage
a. We will pay for the actual loss of business income and necessary extra expense you sustain due to the necessary suspension of your operations caused by action of civil authority that prohibits access to a location. Such prohibition of access to such location by a civil authority must:
(1) Arise from direct physical loss or damage to property other than at such location; and
(2) Be caused by or result from a covered cause of loss; and
(3) Occur within the number of miles stated in the Declarations from such location.

. . .

6. Extended Business Income and Extra Expense Coverage

9

a. If a business income and extra expense loss is covered under this Coverage Form, then subject to the Limit of Insurance for Business Income and Extra Expense Coverage:

(1) We will pay for the actual loss of business income you sustain during the period that begins on the date property (except finished stock) is actually repaired, rebuilt, or replaced, and operations are resumed and ends on the earlier of:

(a) The date you could restore your operations with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage occurred; or

(b) The number of consecutive calendar days, stated in the Declarations, after the date operations are resumed.

(2) We will pay the necessary extra expense you incur for advertising, direct mail, discount coupons, or other promotional expense you incur to attract customers back to your business during the period that begins on the date property (except finished stock) is actually repaired, rebuilt, or replaced, and operations are resumed and ends on the earlier of:

(a) The date you could restore your operations with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage occurred; or

(b) The number of consecutive calendar days, stated in the Declarations, after the date operations are resumed.

42    The Subject Policy also includes Extensions of Coverage Applicable to Property,

Business Income and Extra Expense Coverages, including in relevant part:

1. Communicable Disease Coverage

a. (1) We will pay for direct physical loss or damage to Property Insured caused by or resulting from a covered communicable disease event at a location including the following necessary costs incurred to:

(a) Tear out and replace any part of Property Insured in order to gain access to the communicable disease;

(b) Repair or rebuild Property Insured which has been damaged or destroyed by the communicable disease; and

(c) Mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects the communicable disease.

2. If the Declarations show a Limit of Insurance for Business Income and Extra Expense Coverage, then we will pay for the actual loss of **business income** and necessary **extra expense** you sustain due to he necessary **suspension** of **operations** during the **period of restoration.** The **suspension** must be due to direct physical

10

loss or damage to property at a location caused by or resulting from a covered **communicable disease event**.

43**.** The Subject Policy has defined **Communicable disease** as any disease, bacteria, or virus that may be transmitted directly or indirectly from human or animal to a human.

44. The Subject Policy has defined **Communicable disease event** as an event in which a **public health authority** has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a **communicable disease** at such location.

45. No exclusion in the Subject Policy applies to preclude coverage for the actual presence of Covid-19 at or away from Plaintiffs' property, the physical loss and damage to the property or the business interruption losses that have and will continue to result from the physical loss and damage to the property.

46. The Subject Policy provides coverages for multiple locations, including those locations identified in Exhibit "A", as attached hereto.

47. As a result of the Covid-19 pandemic and the civil authority orders that flowed therefrom, Plaintiffs experienced a loss in revenue, amongst other losses.

48. In particular, beginning on or about March 20, 2020, Plaintiffs businesses were interrupted by various civil authority orders.

49. As Plaintiffs losses continue to mount and hoping to obtain some monetary relief, on or about July 13, 2020, Plaintiffs submitted a Sworn Statement in Partial Proof of Loss in the amount of $3,378,572.00.

50. As part of the Sworn Statement in Partial Proof of Loss, Plaintiffs provided financial records demonstrating the quantum of loss.

11

51.     Pursuant to Insurance Law § 216.6, National Surety Corporation had 15 days to accept or reject the claim submitted by Plaintiffs in a timely manner.

52.     On or about July 30, 2020, Defendant sent Plaintiffs correspondence acknowledging receipt of Plaintiffs' Sworn Statement in Partial Proof of Loss, and stating the Defendant would not accept the Sworn Statement in Partial Proof of Loss as it was "premature."

53.     The Defendant's July 30, 2020 letter further indicated that Defendant required Plaintiffs to reply to a May 6, 2020 request from the Defendant for generic information relating to the Plaintiffs' claim.

54.     Notably, all information requested in the May 6, 2020 request from Defendant had been included in Plaintiffs' Sworn Statement in Partial Proof of Loss submitted on or about July 13, 2020.

55.     Notwithstanding the fact that Plaintiffs had previously provided all requested information and records, on or about September 3, 2020 Plaintiffs provided explicit responses to Defendant's prior correspondence, reiterating the information from Plaintiffs' previously submitted Sworn Statement in Partial Proof of Loss.

56.     To date, the designated adjuster for Defendant has not substantively responded to Plaintiffs' claim.

57.     As documented by all of the information Plaintiffs had suffered over $3 million in damages when it filed its partial Proof of Loss.

58.     Defendant's lack of timely response to Plaintiffs' Sworn Statement in Proof of Loss reflects a pattern of conduct and behavior in which Defendant has inexcusably delayed payment on claims and improperly denied coverage relating to claims for losses caused by Covid-19 and the ongoing pandemic.

12

59.     Plaintiffs have continued to suffer damages subsequent to their submission of the Sworn Statement in Partial Proof of Loss.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT
(Breach of Contract)

60.     Plaintiffs repeat and reallege paragraphs "1" through "59", with the same force and effect as if set forth at length herein.

61.     The Subject Policy constituted a binding contract between Plaintiffs and National Surety Corporation.

62.     Plaintiffs complied with all of their obligations under the Subject Policy, including through timely notification of a loss and the filing of a Sworn Statement in Proof of Loss.

63.     As a result of the physical loss or damage suffered to the insured property as well as the governmental orders that flowed therefrom, Plaintiffs have suffered damages in the amount of

64.     To date, National Surety has failed to compensate Plaintiffs for any of Plaintiffs' losses.

[Remainder of the Page Intentionally Blank]

13

Case 1:21-cv-03506 Document 1 Filed 04/20/21 Page 21 of 24

**WHEREFORE**, Plaintiff demands judgment against National Surety Corporation as follows:

(a)  On the First Cause of Action, a money judgment against National Surety Corporation in the combined amount of at least \$3,764,727, together with such additional and subsequent damages as may be proven at trial; and

(b)  Reasonable fees and costs and such other and further relief as to which this Court deems just and proper.

Dated: New York, New York
       January 27, 2021

Yours, etc.,

**WEG AND MYERS, P.C.**
*Attorneys for Plaintiff*

By:   /s/ /Dennis T. D'Antonio/
          Dennis T. D'Antonio, Esq.
Federal Plaza
52 Duane Street, 2nd Floor
New York, New York 10007
(212) 227-4210

14

*Index No.*                    *Year*

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

ABBEY HOTEL ACQUISITION, LLC, SETAI HOTEL ACQUISITION LLC, SETAI RESORT & RESIDENCE CONDOMINIUM ASSOCIATION, INC, and SETAI VALET SERVICES, LLC,

                              Plaintiffs,

        -against-

NATIONAL SURETY CORPORATION.,

                              Defendants.

---

SUMMONS AND COMPLAINT

---

## *Weg and Myers, P.C.*

*Attorneys for Plaintiff*
Federal Plaza
52 Duane Street
New York, N.Y. 10007
(212) 227-4210

---

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

Dated: January 27, 2021                    Signature _/s/ Dennis T. D'Antonio_

                                            Print Signer's Name __Dennis T. D'Antonio, Esq.__

---

Service of a copy of the within

Dated:                                      _____
                                            *Attorney(s) for*

---

**PLEASE TAKE NOTICE**

Notice of   [ ]
Entry          that the within is a (certified true copy of a
               entered in the office of the clerk of the within named Court on

Notice of   [ ]
Settlement     that an Order of which the within is a true copy will be presented for
               settlement to the Hon.                          one of the judges
               of the within named Court, at
               on                              , at              M.

Dated:
                              *Weg and Myers, P.C.*
                              Attorneys for
                              Federal Plaza
                              52 Duane Street
                              New York, NY 10007

TO
Attorney(s) for

# Exhibit B

20-124

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

------------------------------------------------------------------------X

ABBEY HOTEL ACQUISITION, LLC,
SETAI HOTEL ACQUISITION LLC, SETAI
RESORT & RESIDENCE CONDOMINIUM
ASSOCIATION, INC, and SETAI
VALET SERVICES, LLC,

                    Plaintiffs,

          -against-

NATIONAL SURETY CORPORATION,

                    Defendant.

------------------------------------------------------------------------X

Index No.: 650651/21

**AFFIDAVIT OF
SERVICE UPON THE
SUPERINTENDENT
OF FINANCIAL
SERVICES**

STATE OF NEW YORK: COUNTY OF NEW YORK: SS.:

JOEL MULLINS, being duly sworn, deposes and says:

deponent is not a party to this action, is over 18 years of age and resides in State of NEW YORK, County of QUEENS.

On FEBRUARY 5TH, 2021 deponent served the within **SUMMONS AND COMPLAINT AND NOTICE OF ELECTRONIC FILING, together with a check in the sum of $40.00** on **NATIONAL SURETY CORPORATION.** via the **NY STATE DEPARTMENT OF FINANCIAL SERVICES** at **ONE COMMERCE PLAZA, SUITE 2300, ALBANY, NY 12257, ATTN: CORPORATE AFFAIRS**, by Regular Mail and depositing a true copy of same enclosed in a post-paid properly addressed wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

                                    JOEL MULLINS

SWORN TO BEFORE ME THIS
9TH DAY OF FEBRUARY, 2021

_____
NOTARY PUBLIC

EMMANUEL LAFORTUNE
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01LA6362844
Qualified in Kings County
Commission Expires 08/07/2021

1 of 1