**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ABBEY HOTEL ACQUISITION, LLC, SETAI HOTEL
ACQUISITION, LLC, SETAI RESORT AND
RESIDENCE CONDOMINIUM ASSOCIATION, INC.
and SETAI VALET SERVICES, LLC

*Plaintiffs*,

v.

NATIONAL SURETY CORPORATION

*Defendant*.

Civil Action No. 1:21-cv-03506

**DEFENDANT NATIONAL SURETY CORPORATION'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Pages**

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS ..................................................................................... 2

    A.  The Complaint ................................................................................................ 3

    B.  The Policy Provisions Referenced in the Complaint ..................................... 4

    C.  The Virus Exclusion ...................................................................................... 8

III.    APPLICABLE LEGAL STANDARD .................................................................. 8

IV.     ARGUMENT ...................................................................................................... 10

    A.  PLAINTIFFS HAVE NOT ALLEGED "DIRECT PHYSICAL LOSS OR DAMAGE." 11

       1.  "Direct physical loss or damage" requires physical alteration of the property. .............. 11

       2.  COVID-19 does not cause "direct physical loss or damage" to property. ..................... 14

    B.  THE POLICY'S VIRUS EXCLUSION BARS COVERAGE FOR PLAINTIFFS' ALLEGED LOSS. ........................................................................................ 18

    C.  PLAINTIFFS CANNOT OTHERWISE PLEAD THE REQUIREMENTS FOR THE POLICY'S EXTENSIONS OF COVERAGE. ................................................ 19

       1.  Plaintiffs have not pleaded the prerequisites for Civil Authority Coverage. ................. 19

       2.  Plaintiffs have not pleaded the prerequisites for Communicable Disease Coverage. ..... 22

V.      CONCLUSION ................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*100 Orchard Street LLC, v. The Travelers Indemnity Insurance Company of
America*, No. 20-cv-8452, (S.D.N.Y. June 8, 2021) ................................................19

*10012 Holdings, Inc. v. Sentinel Ins. Co. Ltd.*,
--- F. Supp. 3d ---, 2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020) ..........................15

*15 Oz Fresh & Healthy Food LLC v. Underwriters at Lloyd's London*,
--- F. Supp. 3d ---, 2021 WL 896216 ...................................................10, 11, 12, 18

*2015 Freeman LLC v. Seneca Specialty Ins. Co.*,
136 A.D.3d 531 (1st Dep't 2016) ...............................................................................9

*AE Mgmt., LLC v. Ill. Union Ins. Co.*,
2021 WL 827192 (S.D. Fla. Mar. 4, 2021) ..............................................................20

*Ascent Hospitality Mgmt. Co. v. Emp'rs Ins. Co. of Wausau*,
2021 WL 1791490 (N.D. Ala. 2021) ...................................................................13, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................8, 17

*B St. Grill & Bar LLC v. Cincinnati Ins. Co.*,
--- F. Supp. 3d ---, 2021 WL 857361 (D. Ariz. Mar. 8, 2021) ................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................8, 17

*Bend Hotel Dev. Co. v. Cincinnati Ins. Co.*,
2021 WL 271294 (N.D. Ill. Jan. 27, 2021) ....................................................12, 13, 17

*Café Int'l Holding Co. LLC v. Westchester Surplus Lines Ins. Co.*,
--- F. Supp. 3d ---, 2021 WL 1803805 (S.D. Fla. May 4, 2021).....................*passim*

*Café La Trova, LLC v. Aspen Specialty Ins. Co.*,
2021 WL 602585 (S.D. Fla. Feb. 16, 2021) .......................................................20, 22

*Condit v. Bedford Cent. Sch. Dist.*,
2017 WL 4685546 (S.D.N.Y. Oct. 16, 2017) .............................................................9

*DeMoura v. Cont'l Cas. Co.*,
--- F. Supp. 3d ---, 2021 WL 848840 (E.D.N.Y. Mar. 5, 2021) ..............................15

ii

*Family Tacos, LLC v. Auto Owners Ins. Co.*,
2021 WL 615307 (N.D. Ohio Feb. 17, 2021) ...................................................12, 16

*Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*,
---F. Supp. 3d ---, 2021 WL 860345 (S.D.N.Y. Mar. 6, 2021) .................................15

*Garcia v. Fed. Ins. Co.*,
472 F.3d 1131 (11th Cir. 2006) .................................................................................9

*Hair Studio 1208, LLC, et al. v. Hartford Underwriters Ins. Co.*,
2021 WL 1945712 (E.D. Pa. May 14, 2021) ...................................................12, 22

*Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*,
489 F. Supp. 3d 1303 (M.D. Fla. 2020) .......................................................................2

*Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*,
2021 WL 117898 (S.D. Fla. Jan. 11, 2021) ............................................11, 12, 17

*Jeffrey M. Dressel, DDS, PC v. Hartford Ins. Co. of the Midwest, Inc.*,
2021 WL 1091711 (E.D.N.Y. Mar. 22, 2021) .......................................................15

*Johnson v. Hartford Fin. Servs. Grp., Inc.*,
--- F. Supp. 3d ---, 2021 WL 37573 (N.D. Ga. Jan. 4, 2021) .....................12, 16, 22

*Kim-Chee LLC v. Phila. Indem. Ins. Co.*,
--- F. Supp. 3d ---, 2021 WL 1600831 (W.D.N.Y. Apr. 23, 2021) .........................14

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
108 F.3d 1531 (2d Cir. 1997) .....................................................................................9

*Mama Jo's Inc. v. Spart Ins. Co.*,
823 F. App'x 868 (11th Cir. 2020) ............................................................................14

*Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*,
483 F. Supp. 3d 1189 (M.D. Fla. 2020) ...................................................................19

*MBIA Inc. v. Certain Underwriters at Lloyd's, London*,
33 F. Supp. 3d 344 (S.D.N.Y. 2014) ...........................................................................9

*Mena Catering, Inc. v. Scottsdale Ins. Co.*,
--- F. Supp. 3d ---, 2021 WL 86777 (S.D. Fla. Jan. 11, 2021) .................................19

*Michael Cetta, Inc. v. Admiral Indem. Co.*,
--- F. Supp. 3d ---, 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020) ................................ *passim*

*Michael J. Redenburg, Esq. PC v. Midvale Indem. Co.*,
  --- F. Supp. 3d ---, 2021 WL 276655 (S.D.N.Y. Jan. 27, 2021) ...............................................19

*Mohawk Gaming Enter. LLC v. Affiliated FM Ins. Co.*,
  --- F. Supp. 3d ---, 2021 WL 1419782 (N.D.N.Y. Apr. 15, 2021) ..........................................16

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
  17 F. Supp. 3d 323 (S.D.N.Y. 2014)...........................................................................................12

*Oral Surgeons, P.C. v. Cincinnati Ins. Co.*,
  491 F. Supp. 3d 455 (S.D. Iowa 2020) .......................................................................................16

*Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.*,
  2007 WL 2900452 (M.D. Fla. Oct. 2, 2007) ................................................................................9

*Promotional Headwear Int'l v. Cincinnati Ins. Co.*,
  --- F. Supp. 3d ---, 2020 WL 7078735 (D. Kan. Dec. 3, 2020) .......................................17, 22

*R.T.G. Furniture Corp. v. Hallmark Specialty Ins. Co.*,
  2021 WL 686864 (M.D. Fla. Jan. 22, 2021)................................................................................14

*Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*,
  499 F. Supp. 3d 1178 (S.D. Fla. 2020) .................................................................................10, 19

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007).........................................................................................................9

*Roundabout Theatre Co. v. Cont'l Cas. Co.*,
  302 A.D.2d 1 (1st Dep't 2002), *aff'd*, 775 N.Y.S2d 857 (2004) .............................................12

*Rye Ridge Corp. v. Cincinnati Ins. Co.*,
  2021 WL 1600475 (S.D.N.Y. Apr. 23, 2021)..............................................................................15

*S.O. Beach Corp. v. Great Am. Ins. Co. of New York*,
  350 F. Supp. 3d 1359 (S.D. Fla. 2018), *aff'd*, 791 F. App'x 106 (11th Cir.
  2019) .............................................................................................................................................10

*Satispie, LLC v. Travelers Prop. Cas. Co. of Am.*,
  448 F. Supp. 3d 287 (W.D.N.Y. 2020) ........................................................................................10

*Sharde Harvey DDS, PLLC v. Sentinel Ins. Co., Ltd.*,
  2021 WL 103455 (E.D.N.Y. Mar. 18, 2021) ...............................................................................15

*Siegle v. Progressive Consumers Ins. Co.*,
  819 So.2d 732 (Fla. 2002)............................................................................................................9

iv

*Smith v. Local 819 I.B.T. Pension Plan*,
 291 F.3d 236 (2d Cir. 2002)........................................................................8

*Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*,
 2020 WL 2904834 (S.D.N.Y. May 14, 2020) ...................................2, 14

*Soundview Cinemas Inc. v. Great Am. Ins. Grp.*,
 2021 WL 561854 (N.Y. Sup. Ct. Nassau Cty. Feb. 8, 2021)...................15

*St. Julian Wine Co.. v. Cincinnati Ins. Co.*,
 2021 WL 1049875 (W.D. Mich. Mar. 19, 2021) ...................................16

*Sullivan Cnty. Fabrication Inc. v. Selective Ins. Co. of Am., et al.*,
 No. 20-cv-5750 (S.D.N.Y. May 19, 2021) .............................14, 16, 19

*Summit Hospitality Grp., Ltd. v. Cincinnati Ins. Co.*,
 2021 WL 831013, (E.D.N.C. Mar. 4, 2021) .....................................13, 22

*Tappo of Buffalo, LLC v. Erie Ins. Co.*,
 2020 WL 7867553 (W.D.N.Y. Dec. 29, 2020).....................................15

*Town Kitchen LLC v. Certain Underwriters at Lloyd's, London*,
 2021 WL 768273 (S.D. Fla. Feb. 26, 2021) .........................................14

*W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*,
 498 F. Supp. 3d 1233 (C.D. Cal. 2020) ...................................13, 17, 21

**Other Authorities**

*Black's Law Dictionary* (11th ed. 2019)......................................................11

Federal Rule of Civil Procedure 12(b)(6) ...........................................1, 8

Miami-Dade County Emergency Order No. 03-20..............................3, 4, 22

Miami-Dade County Emergency Order No. 09-20.................................4

Defendant National Surety Corporation ("National Surety") submits this Memorandum of Law in support of its Motion to Dismiss the Complaint filed by Plaintiffs Abbey Hotel Acquisition, LLC, Setai Hotel Acquisition, LLC, Setai Resort and Residence Condominium Association Inc. and Setai Valet Services, LLC ("Plaintiffs") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## I.   INTRODUCTION

The primary question before the Court in this commercial property insurance coverage dispute is whether Plaintiffs have pleaded, or ever can plead, facts sufficient to demonstrate that their alleged loss was the result of direct physical loss or damage to property. According to the Complaint, Plaintiffs' hotel business suffered "significant economic damages" due to a "decrease in reservations" caused by customers' desire to "avoid contracting the virus while visiting Plaintiffs' property" and Emergency Orders issued by the Florida state authorities requiring Plaintiffs to limit their operations. (Pls.' Compl., ECF No. 1, Exhibit A (hereinafter, "Compl.") ¶¶ 27-28, 33.) Plaintiffs claim that National Surety breached the Policy by "fail[ing] . . . to provide payment to Plaintiff [*sic*] for its losses resulting from the global pandemic commonly referred to as coronavirus or Covid-19 beginning on or about March 17, 2020." (Compl. ¶ 38.)

The Complaint fails to state a cause of action because Plaintiffs cannot plausibly allege facts demonstrating that COVID-19 or any Emergency Order resulted in *direct physical loss or damage* to property. As one U.S. District Court succinctly explained in granting a similar Motion to Dismiss:

> In sum, although the Court is sympathetic to Plaintiff and all insureds that experienced economic losses associated with COVID-19, there is simply no coverage under the policies if they require "direct physical loss of or damage" to property. Here, there is no business income coverage and no civil authority coverage because the Amended Complaint fails to allege facts describing how the

Property suffered any actual physical loss or damage. It is also apparent that any amendment would be futile under the circumstances.

*Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*, 489 F. Supp. 3d 1303, 1308 (M.D. Fla. 2020). Indeed, U.S. District Courts across the country have granted motions to dismiss in mirror-image lawsuits to the one Plaintiff brought here. As Your Honor observed COVID-19 "damages lungs. It doesn't damage printing presses." *Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, 2020 WL 2904834, at Tr. 4:17-18, 5:3-4, 5:21-24 (S.D.N.Y. May 14, 2020) (Transcript of Hearing on Motion for Preliminary Injunction).

Like the pleadings in *Infinity Exhibits* and *Social Life Magazine*, Plaintiffs' Complaint here does not identify any specific property that incurred any physical damage at all. To the contrary, Plaintiffs admit that the alleged loss of business income was caused not by physical damage to any furniture, the roof, the flooring, the walls, or any other fixture or improvement to the insured property, but instead by the Emergency Orders issued by Florida state authorities. (*See* Compl. ¶ 33.) Moreover, because the Emergency Orders were issued in direct response to COVID-19, any resulting loss is expressly excluded from coverage by the Policy's virus exclusion. Accordingly, National Surety respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

## II.  STATEMENT OF FACTS

Plaintiffs own and operate the Setai Hotel in Miami Beach, Florida. (Compl. ¶¶ 1-2.) Effective April 27, 2019, National Surety issued Plaintiffs a one-year insurance policy bearing number DXJ-80996603 that provided commercial property and other insurance as defined and limited therein (the "Policy"). (Compl. ¶¶ 39, 41.) The Policy also names Plaintiffs Setai Hotel Acquisition LLC, Setai Resort & Residences Condominium Association, Inc. and Setai Valet Services, LLC as insureds, (*see* Compl. ¶¶ 39, 46; Plaintiffs' Policy, attached hereto as Exhibit A)

and covers certain related properties in addition to the Setai Hotel, including its affiliated restaurant (the "Insured Properties"), (*see* Compl. ¶ 3-4; Ex. A). All of the Insured Properties are located in the State of Florida. The property coverage under the Policy is subject to an overall limit of $158,710,000. (Ex. A-1, Property Coverage Declarations.)

### A. The Complaint

Plaintiffs commenced this action on January 28, 2021. (ECF No.1, Exhibit A.) In their Complaint, Plaintiffs allege that they filed a claim for $3,478,572.00 under the Policy in July 2020 for coverage of physical loss or damage and loss of business income allegedly caused by the COVID-19 virus ("COVID-19" or the "coronavirus" or the "virus") and the related governmental orders. (Compl. ¶ 63.) Specifically, Plaintiffs claim that COVID-19 damaged unidentified "surfaces found within the insureds' premises and surrounding premises, as well as . . . the breathable air circulating within the insureds' premises and surrounding premises." (Compl. ¶ 29.) Plaintiffs further allege that they experienced "a decrease in reservations and related income as a result of the desire of customers to avoid contracting the virus while visiting Plaintiffs' property" and because "civil authority orders began to be issued by Miami-Dade County and Florida state authorities," which "require[d Plaintiffs'] properties to close their doors to the public or otherwise limit their services." (Compl. ¶ 33.)

Plaintiffs' allegations are based upon two Miami-Dade County Emergency Orders. First, Emergency Order 03-20 issued March 17, 2020 required (in part) all restaurants, bars, and other food service businesses with seating for more than eight people within Miami-Dade County to "close on-premises service of customers." (Compl. ¶ 35.) Emergency Order 03-20 further provided

that such establishments "may operate their kitchens for the purpose of providing delivery services. . . ." A copy of Emergency Order 03-20 is attached hereto as Exhibit B.[1]

Second, the Amendment to Emergency Order 09-20, issued March 25, 2020, required (in part) that hotels decline "new reservations for persons other than Essential Lodgers" (i.e., healthcare professionals, first responders, others responding to COVID-19, persons who must vacate their homes due to exigent circumstances, etc.),[2] and not "accept any occupants" or "extend existing reservations, for persons other than Essential Lodgers." (Compl. ¶ 34.) A copy of the Amendment to Emergency Order 09-20 is attached hereto as Exhibit C.[3]

### B.  The Policy Provisions Referenced in the Complaint

The Policy provides coverage for "direct physical loss or damage" to the Insured Properties, as well as for loss of certain business income and expenses sustained while operations are necessarily suspended to repair the damage to the Insured Property. (*See* Compl. ¶ 45(1);[4] Ex.

---

[1] Available at: https://www.miamidade.gov/information/library/coronavirus-emergency-order-03-20-food-service.pdf. The Court can take judicial notice of governmental orders on a motion to dismiss. *Michael Cetta, Inc. v. Admiral Indem. Co.*, --- F. Supp. 3d ---, 2020 WL 7321405, at *3 (S.D.N.Y. Dec. 11, 2020).

[2] "Essential Lodgers" was defined by the Emergency Order to include healthcare professionals, first responders, National Guard members, law enforcement, state or federal government employees, airline crewmembers, patients, patients' families, journalists, others responding to COVID-19, displaced residents or visitors, persons unable to return to their home due to COVID-19 impacts on travel, persons who must vacate their homes due to exigent circumstances, such as fire or flood, persons utilizing hotels as transitional living arrangements, persons sheltering in hotels due to domestic violence, hotel employees, service providers, and contractors, or individuals who, for any reason, are temporarily unavailable to reside in their home. Miami-Dade County Emergency Order No. 09-20, available at: https://www.miamidade.gov/information/library/canceled-coronavirus-emergency-order-09-20-commercial-lodging-1.pdf

[3] Available at: https://www.miamidade.gov/information/library/canceled-coronavirus-emergency-order-09-20-commercial-lodging-1.pdf

[4] Paragraph numbers 41-45 appear in the Complaint twice. Accordingly, the first paragraph numbered 41 is referred to herein as "¶ 41(1)" and the second paragraph numbered 41 is referred to herein as "¶ 41(2)." The same applies for Paragraphs 42-45.

Page **4** of 24

A, Property Coverage §§ I.A, II.A.) To be covered, the physical loss or damage must be "caused

by or resulting from a covered cause of loss." (*Id.*)

Plaintiffs allege they are entitled to coverage under the following Policy provisions:

- Property Coverage (Compl. ¶45(1).)
- Business Income and Extra Expense Coverage (Compl. ¶ 45(1).)
- Civil Authority Coverage (Compl. ¶ 41(2).)
- Extended Business Income and Extra Expense Coverage (Compl. ¶ 41(2).)
- Communicable Disease Coverage (Compl. ¶¶ 42-44.)

All of these provisions require "direct physical loss or damage" to property as detailed

below:

| Policy Provision | Text | Cite |
|---|---|---|
| Property Coverage | "[W]e will pay for <u>direct physical loss or damage</u> to Property Insured . . . caused by or resulting from a covered cause of loss during the Policy Period." | Compl. ¶ 45(1) (emphasis added); Ex. A, Property Coverage § I.A. |
| Business Income and Extra Expense | "[W]e will pay for the actual loss of business income and necessary expense you sustain due to the necessary suspension of your operations during the period of restoration arising from <u>direct physical loss or damage</u> to property . . . caused by or resulting from a covered cause of loss." | Compl. ¶ 45(1) (emphasis added); Ex. A, Property Coverage § II.A. |
| Extended Business Income and Extra Expense Coverage | Extended coverage is available only "[i]f a business income and extra expense loss is covered under this Coverage Form," which requires "<u>direct physical loss or damage</u>" as set forth above. | Compl. ¶ 41(2) (emphasis added); Ex. A, Property Coverage § V.E.6. |
| Civil Authority Coverage (Extension of Coverage) | "Such prohibition of access to such location by a civil authority must (1) Arise from <u>direct physical loss or damage</u> to property other than at such location; and (2) Be caused by or result from a covered cause of loss . . . ." | Compl. ¶ 41(2) (emphasis added); Ex. A, Property Coverage § V.E.2. |
| Communicable Disease Coverage | "We will pay for <u>direct physical loss or damage</u> to Property Insured caused by or resulting from a covered communicable disease event at a location. . . ." | Compl. ¶42(2)-44(2) (emphasis added); Ex. A, Property Coverage § V.F.1. |
| | "[W]e will pay for the actual loss of business income and necessary extra expense you sustain | Compl. ¶42(2)-44(2) (emphasis added); |

| | due to the necessary suspension of operations during the period of restoration. The suspension must be due to <u>direct physical loss or damage</u> to property at a location caused by or resulting from a covered communicable disease event." | Ex. A, Property Coverage § V.F.1(a)(2). |
|---|---|---|

Each provision also contains its own additional prerequisites to coverage. (Ex. A, Property Coverage § V.)

Under the Property Coverage provision, the Policy only covers "direct physical loss or damage" to the Insured Properties if such damage or loss is "caused by or resulting from a covered cause of loss during the Policy Period." (Compl. ¶ 45(1); Ex. A, Property Coverage § I.A.) The Policy defines "covered cause of loss" to mean "risk of direct physical loss or damage not excluded or limited in this Coverage Form." (Ex. A, Property Coverage § XIV.13.)

Similarly, under the Communicable Disease Coverage provision, the Policy only covers "direct physical loss or damage" to the Insured Properties if such damage or loss is "caused by or resulting from a covered communicable disease event." (Compl. ¶ 42(2); Ex. A, Property Coverage § V.F.1.)   A "communicable disease event" is defined as "an event in which a public health authority has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such location." (Compl. ¶ 44(2); Ex. A, Property Coverage § XIV.11.)

Under the Business Income and Extra Expense Coverage provision, the Policy covers "the actual loss of business income and necessary extra expense [Plaintiffs] sustain[ed] due to the necessary suspension of [Plaintiffs'] operations during the period of restoration arising from <u>direct physical loss or damage to property</u> . . . caused by or resulting from a covered cause of loss." (Compl. ¶ 45(1) (emphasis added); Ex. A, Property Coverage § II.A.) According to the Policy's Definitions, Plaintiffs must have experienced a "slowdown or cessation of [its] operations" or the

premises of the Insured Properties must be "rendered untenable" to trigger coverage. (Ex. A, Property Coverage § XIV.69.)

Business Income and Extra Expense Coverage is only available for the "period of restoration" arising from the "direct physical loss or damage." (Compl. ¶ 45(1); Ex. A, Property Coverage § II.A.) "Period of restoration" is defined by the Policy as "the period of time that begins immediately after the time of direct physical loss or damage caused by or resulting from a covered cause of loss to property . . . and ends on the earlier of: (1) The date when such property at the location should be repaired, rebuilt, or replaced with reasonable speed and like kind and quality; or (2) The date when business is resumed at a new permanent location." (Ex. A, Property Coverage § XIV.50.)

Loss of business income and necessary extra expense may also be covered (subject to the Policy's limit) under the Civil Authority Coverage provision only where such losses are "sustain[ed] due to the necessary suspension of [Plaintiffs'] operations caused by action of civil authority that prohibits access to a[n Insured Property]. To trigger coverage, the prohibition of access by the civil authority must (1) "[a]rise from direct physical loss or damage to property *other than* the Insured Property; and (2) "[b]e caused by or result from a covered cause of loss; and (3) [o]ccur within the number of miles stated in the Declarations from such location." (Ex. A, Property Coverage § V.E.2.) (emphasis added). "Suspension" of business operations and "covered cause of loss" hold the same Policy definitions as set forth above.

In addition to coverage of direct physical loss or damage discussed above, the Communicable Disease Coverage provision also covers limited income and extra expenses incurred "due to the necessary suspension of operations during the period of restoration." (Ex. A,

Property Coverage § F.1.a.(2).) "The suspension must be due to direct physical loss or damage to property at a location caused by or resulting from a covered communicable disease event." (*Id.*)

### C. The Virus Exclusion

The Exclusions Section provides:

A. Exclusions Applicable to all Coverages: We will not pay under Property Coverage, Business Income and Extra Expense Coverage, or any Extensions of Coverage, for any loss, damage, or expense caused directly or indirectly by or resulting from any of the following excluded causes of loss; such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

    1. Regardless of how the cause of loss occurs, we will not pay for direct physical loss, damage, or expense caused by or resulting from the following causes of loss:

[ . . .]

      h. Mortality and Disease

        Mortality, death by natural causes, disease, sickness, any condition of health, bacteria, or <u>virus</u>.

(Ex. A, Property Coverage § IV.A.1.h (emphasis added) (the "Virus Exclusion").)

### III. APPLICABLE LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a case should be dismissed where the complaint is not "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet the plausibility standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While the court must accept all well-pleaded facts as true, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation omitted). "[T]he court may permissibly consider . . .[d]ocuments

that are attached to the complaint or incorporated in it by reference," such as the Policy." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Dismissal with prejudice is appropriate if amendment to the complaint would be futile. *Michael Cetta, Inc. v. Admiral Indem. Co.*, ---F. Supp. 3d ---, 2020 WL 7321405, at *13 (S.D.N.Y. Dec. 11, 2020).

In a motion-to-dismiss analysis of an insurance coverage dispute, it is the terms of the Policies, rather than the Complaint's mischaracterization of them, that control as a matter of law. *See MBIA Inc. v. Certain Underwriters at Lloyd's, London*, 33 F. Supp. 3d 344, 353 (S.D.N.Y. 2014); *Condit v. Bedford Cent. Sch. Dist.*, 2017 WL 4685546, at *1 n.2 (S.D.N.Y. Oct. 16, 2017). Under Florida Law,[5] "an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy." *Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.*, 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th Dist. Ct. App. 2002)). "[I]nsurance contracts are construed according to their plain meaning." *Garcia v. Fed. Ins. Co.*, 472 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)). Their terms "should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties-not a strained, forced or unrealistic construction." *Siegle v. Progressive Consumers Ins. Co.*, 819 So.2d 732, 736 (Fla. 2002). "If a term is undefined in a policy, a court "may consult

---

[5] Florida law governs this dispute. A federal court adjudicating a state law claim applies the choice of law rules of the forum state. *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997). Under New York's "center of gravity" test, courts look principally to the location of the insured risk, "the place of contracting, the places of negotiation and performance, . . . and the . . . place of business of the parties." *Id.* (internal quotation omitted). "The location of the insured risk will be given greater weight than other factors where, as here, the insured risks are located in one state." *2015 Freeman LLC v. Seneca Specialty Ins. Co.*, 136 A.D.3d 531, 532 (1st Dep't 2016). Here, National Surety's principal place of business is in Illinois, the broker placing the policies was in Maryland, the policies were delivered in New York, and Plaintiffs are citizens of both Florida and New York. However, the location of the insured risk is entirely in the state of Florida. (*See* Ex. A-1.) In any event, there is no conflict between New York and Florida law for purposes of this motion.

references commonly relied upon to supply the accepted meanings of words." *15 Oz Fresh & Healthy Food LLC v. Underwriters at Lloyd's London*, --- F. Supp. 3d ---, 2021 WL 896216, *appeal docketed,* at \*2 (S.D. Fla. Feb. 22, 2021).

"The well-settled rule is that a court shall not rewrite a contract of insurance extending the coverage afforded beyond that plainly set forth in the insurance contract." *Café Int'l Holding Co. LLC v. Westchester Surplus Lines Ins. Co.*, --- F. Supp. 3d ---, 2021 WL 1803805, at \* (S.D. Fla. May 4, 2021).  Under Florida law, "[t]he burden is on the insured to prove that the insurance policy covers a claim." *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, 499 F. Supp. 3d 1178, 1184 (S.D. Fla. 2020).[6] "At the motion-to-dismiss stage, the burden is on the plaintiff to 'sufficiently allege that its purported losses are covered under the [p]olicy.'" *15 Oz Fresh & Healthy Food LLC*, 2021 WL 896216, at \*2 (quoting *Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*, 2021 WL 117898, at \*2 (S.D. Fla. Jan. 11, 2021)); *see S.O. Beach Corp. v. Great Am. Ins. Co. of New York*, 350 F. Supp. 3d 1359, 1364 (S.D. Fla. 2018), *aff'd*, 791 F. App'x 106 (11th Cir. 2019).

## IV. ARGUMENT

Plaintiffs' Complaint should be dismissed with prejudice for three reasons. *First*¸ Plaintiffs have not demonstrated "direct physical loss or damage" to the Insured Properties or to any other property. The overwhelming majority of courts in Florida, New York, and across the country have dismissed complaints just like this one because purely economic losses do not arise from direct physical loss or damage. All of Plaintiffs' claims should be dismissed for this reason alone.

---

[6] Plaintiffs bear the same burden under New York law.  *See Satispie, LLC v. Travelers Prop. Cas. Co. of Am.*, 448 F. Supp. 3d 287, 293 (W.D.N.Y. 2020).

*Second*, regardless of whether Plaintiffs can meet their threshold burden to demonstrate coverage under the provisions of the Policy (and it cannot), Plaintiffs' claims are barred by the Policy's Virus Exclusion. This provision specifically excludes coverage for any loss caused directly or indirectly by a "virus." Because Plaintiffs' claims are for losses allegedly caused by the coronavirus, those claims are excluded under the Virus Exclusion.

*Third*, Plaintiffs likewise have failed to meet other prerequisites for coverage under the Policy because, *inter alia*, (1) COVID-19 is not a "covered cause of loss", and (2) the Emergency Orders did not require any Insured Properties to "be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such location."

## A.  PLAINTIFFS HAVE NOT ALLEGED "DIRECT PHYSICAL LOSS OR DAMAGE."

### 1. "Direct physical loss or damage" requires physical alteration of the property.

As set forth in the tables above, each of the Policy provisions on which Plaintiffs rely requires a showing of "direct physical loss or damage" that results from a "covered cause of loss" for coverage to apply. A "covered cause of loss" is any "risk of direct physical loss or damage" (unless expressly excluded). (Ex. A, Property Coverage § XIV.A.13.) "Direct physical loss or damage" is not defined by the Policy. Accordingly, the Court must give those terms their plain and ordinary meaning. *15 Oz Fresh & Healthy Food LLC*, 2021 WL 896216, at \*4. "A 'loss' is the diminution of value of something." *Island Hotel Props., Inc.*, 2021 WL 117898, at \*3 (citing *Black's Law Dictionary* (10th ed. 2014)). "Damage" is defined as "loss or injury to person or property." *Black's Law Dictionary* (11th ed. 2019). The phrase "direct physical" modifies both "loss" and "damage." *Id.*; *see 15 Oz Fresh & Healthy Food LLC*, 2021 WL 896216, at \*4. Therefore, under Florida law, the phrase "direct physical loss of or damage" requires "a distinct,

demonstrable, *physical alteration of the property*, and does not include 'losses that are intangible or incorporeal.'" *Café Int'l Holding Co. LLC*, 2021 WL 1803805, at *10 (quoting *AE Mgmt., LLC v. Ill. Union Ins. Co.*, 2021 WL 827192 (S.D. Fla. Mar. 4, 2021) (emphasis in original)); *see Island Hotel Props., Inc.*, 2021 WL 896216, at *3 (holding that the phrase requires some "*physical problem* with the covered property to be a covered loss" (internal quotations omitted) (emphasis in original)). "[L]oss of use of property for its intended purpose does not constitute 'direct physical loss.'" *15 Oz Fresh & Healthy Food LLC*, 2021 WL 896216, at *5 (citing *Café La Trova, LLC v. Aspen Specialty Ins. Co.*, 2021 WL 602585, at *8 (S.D. Fla. Feb. 16, 2021)). "Pure economic harm untethered to any physical alteration to property is [also] insufficient to establish coverage." *Café Int'l Holding Co. LLC*, 2021 WL 1803805, at *10.

Like Florida courts, New York courts also have consistently held that coverage for a "direct physical loss or damage" requires some form of actual, physical alteration to the insured premises for insurance coverage to apply. *See Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 7 (1st Dep't 2002), *aff'd*, 775 N.Y.S2d 857 (2004); *see Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (holding that "the words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself").

Indeed, Courts across the country have interpreted identical or similar language in all-risk policies the same way. *See, e.g.*, *Hair Studio 1208, LLC, et al. v. Hartford Underwriters Ins. Co.*, 2021 WL 1945712, at *6 (E.D. Pa. May 14, 2021); *Family Tacos, LLC v. Auto Owners Ins. Co.*, 2021 WL 615307, *appeal docketed,* at *7 (N.D. Ohio Feb. 17, 2021); *Bend Hotel Dev. Co. v. Cincinnati Ins. Co.*, 2021 WL 271294, *appeal docketed,* at *3 (N.D. Ill. Jan. 27, 2021); *Johnson v. Hartford Fin. Servs. Grp., Inc.*, --- F. Supp. 3d ---, 2021 WL 37573, at *4-5 (N.D. Ga. Jan. 4,

2021); *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, 498 F. Supp. 3d 1233, 1238 (C.D. Cal. 2020).

These cases also align with the language of Plaintiffs' Policy, which limits business income and expense coverage to losses occurring during the "period of restoration." (Ex. A, Property Coverage § XIV.A.50.) The "period of restoration" begins at the time of the "direct physical loss or damage" resulting from a "covered cause of loss"[7] and ends when the damaged property "should be repaired, rebuilt, or replaced with reasonable speed and like kind and quality." (*Id.*) Notably, the definition of "restoration" does not include cleaning or disinfecting. (*Id.*) "This definition leads to the conclusion that direct physical loss must be a loss requiring repair or replacement." *Ascent Hospitality Mgmt. Co. v. Emp'rs Ins. Co. of Wausau*, 2021 WL 1791490, at *4 (N.D. Ala. 2021) (citing *R.T.G. Furniture Corp. v. Hallmark Specialty Ins. Co.*, 2021 WL 686864, *appeal docketed,* at *3 (M.D. Fla. Jan. 22, 2021)). To hold otherwise would render the "period of restoration" language meaningless. Courts around the country have taken into account similar recovery or restoration period provisions and held that such clauses "suggest[] the occurrence of material harm that then requires a physical fix." *Michael Cetta, Inc.*, 2020 WL 7321405, at *6; *see Summit Hospitality Grp., Ltd. v. Cincinnati Ins. Co.*, 2021 WL 831013, *appeal docketed,* at *4 (E.D.N.C. Mar. 4, 2021); *Bend Hotel Dev. Co.*, 2021 WL 271294, at *3; *W. Coast Hotel Mgmt., LLC*, 498 F. Supp. 3d at 1238. Consequently, these provisions support National Surety's interpretation of the Policy.

---

[7] "'Even if a business's slowdown could be attributed to a 'period of restoration,' there is still no coverage because the slowdown 'must be caused by direct physical loss of or damage to property' in the first place." *Café Int'l Holding Co.*, 2021 WL 1803805, at *12 (quoting *Mama Jo's Inc. v. Spart Ins. Co.*, 823 F. App'x 868, 879-80 (11th Cir. 2020).

### 2. COVID-19 does not cause "direct physical loss or damage" to property.

COVID-19 "does not physically alter the appearance, shape, color, structure, or other material dimension" of exposed property, air, or surfaces. *R.T.G. Furniture Corp.*, 2021 WL 686864, at *3 (quoting *Sandy Point Dental, PC v. The Cincinnati Ins. Co.*, 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21, 2020)). "Even when present, COVID-19 does not threaten the inanimate structures covered by property insurance policies." *Id.* at *3 (quoting *Uncork & Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878, (S.D.W.V. Nov. 2, 2020)). Rather, its presence is only temporary and "can be eliminated with disinfectant." *Id.* "[A]n item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Mama Jo's Inc. v. Spart Ins. Co.*, 823 F. App'x 868, 883-84 (11th Cir. 2020); *see also Café Int'l Holding Co.*, 2021 WL 1803805, at *10; *Town Kitchen LLC v. Certain Underwriters at Lloyd's, London*, 2021 WL 768273, at *7 (S.D. Fla. Feb. 26, 2021) (dismissing plaintiff's complaint because the only "repairs" for COVID-19 would be "routine disinfecting with which we are all familiar and cleaning costs are not tangible, physical losses but rather economic losses").

Federal and state courts in New York have reached the same conclusion. *See Social Life Magazine, Inc.*, 2020 WL 2904834, Hearing Transcript (Caproni, J.) (coronavirus "damages lungs. It doesn't damage [inanimate objects]."); *Sullivan Cnty. Fabrication Inc. v. Selective Ins. Co. of Am., et al.*, No. 20-cv-5750, Transcript at 31 (S.D.N.Y. May 19, 2021)[8] (holding that plaintiff failed to plausibly allege direct physical loss of or damage to its property as a result of COVID-19 and the accompanying Executive Orders); *Kim-Chee LLC v. Phila. Indem. Ins. Co.*, --- F. Supp. 3d ---, 2021 WL 1600831, at *3 (W.D.N.Y. Apr. 23, 2021) ("In an unbroken line of trial court

---

[8] A copy of Judge Halpern's Opinion in *Sullivan Cnty. Fabrication Inc. v. Selective Ins. Co. of Am., et al.*, Cause No. 20-cv-5750 is attached hereto for the Court's convenience as Exhibit D.

decisions, federal courts applying New York law have ruled that the closure of businesses due to the suspected presence of the virus or due to New York State executive orders do not qualify as direct physical loss or damage."); *Rye Ridge Corp. v. Cincinnati Ins. Co.*, 2021 WL 1600475, *appeal docketed,* at *4 (S.D.N.Y. Apr. 23, 2021) (granting motion to dismiss insured's COVID-19 claim under New York law); *Michael Cetta, Inc.*, 2020 WL 7321405, at *11 (granting motion to dismiss insured's COVID-19 claim with prejudice under New York law); *10012 Holdings, Inc. v. Sentinel Ins. Co. Ltd.*, --- F. Supp. 3d ---, 2020 WL 7360252, *appeal docketed,* (S.D.N.Y. Dec. 15, 2020) (same); *Tappo of Buffalo, LLC v. Erie Ins. Co.*, 2020 WL 7867553 (W.D.N.Y. Dec. 29, 2020) (Magistrate's recommendation that motion to dismiss be granted); *DeMoura v. Cont'l Cas. Co.*, --- F. Supp. 3d. ---, 2021 WL 848840 (E.D.N.Y. Mar. 5, 2021) (dismissing plaintiff's COVID-19 insurance claims with prejudice); *Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, ---F. Supp. 3d ---, 2021 WL 860345 (S.D.N.Y. Mar. 6, 2021) (same); *Sharde Harvey DDS, PLLC v. Sentinel Ins. Co., Ltd.*, 2021 WL 103455, at *4 (E.D.N.Y. Mar. 18, 2021) (same); *Jeffrey M. Dressel, DDS, PC v. Hartford Ins. Co. of the Midwest, Inc.*, 2021 WL 1091711, at *4 (E.D.N.Y. Mar. 22, 2021) (granting motion to dismiss, noting "[t]hough the virus has the potential to cause significant harm to people, the court is not aware of any scenario in which its presence can cause 'physical damage' to property . . . ."); *Soundview Cinemas Inc. v. Great Am. Ins. Grp.*, 2021 WL 561854, at *9 (N.Y. Sup. Ct. Nassau Cty. Feb. 8, 2021) (concurring with the "majority view" that COVID-19 losses do not constitute "direct physical loss of or damage to the property" that triggers business income coverage).

These Florida and New York decisions align with the overwhelming majority of courts nationwide in holding that, although COVID-19 may harm human health, it does not cause "direct physical loss or damage" to property and thus does not trigger coverage under a commercial

property insurance policy like the one issued to the Plaintiffs in this case.  *See Mohawk Gaming Enter. LLC v. Affiliated FM Ins. Co.*, --- F. Supp. 3d ---, 2021 WL 1419782, at *5 (N.D.N.Y. Apr. 15, 2021) ("[N]umerous courts around the country . . . have routinely held that the mere presence or spread of the novel coronavirus is insufficient to trigger coverage when the policy's language requires physical loss or physical damage."); *Johnson*, 2021 WL 37573, at *4-5 ("[A] litany of federal and state courts across the country interpreting similar policy language have roundly dismissed COVID-19-related insurance cases for failure to allege that the covered properties sustained any physical damage.");  *Sullivan Cnty. Fabrication, Inc.*, 20-cv-5750, ECF No. 32 at 31 ("The great majority of the courts that have addressed this issue of COVID insurance for business losses sustained during the COVID-19 restrictions have held that a complaint, which only alleges loss of use of the insured property fails to satisfy the requirement for physical damage or loss."); *accord Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 491 F. Supp. 3d 455, 456 (S.D. Iowa 2020) ("[V]irus-related closures of business do not amount to direct loss to property covered by the Cincinnati policy of insurance."); *Ascent Hospitality Mgmt. Co.*, 2021 WL 1791490, at *4 ("Cleaning and disinfecting do not involve replacing or fixing parts, and a structure is not faulty because it has a contaminated surface that can be decontaminated by cleaning and disinfecting."); *St. Julian Wine Co.. v. Cincinnati Ins. Co.*, 2021 WL 1049875, at *3 (W.D. Mich. Mar. 19, 2021) ("[T]here is no reasonable construction of 'physical loss' or 'physical damage' that encompasses the presence of a contagious virus in the general population.'"); *B St. Grill & Bar LLC v. Cincinnati Ins. Co.*, --- F. Supp. 3d ---, 2021 WL 857361, at *5 (D. Ariz. Mar. 8, 2021) ("The mere fact that Plaintiffs needed to clean surfaces that could host the virus does not constitute actual physical damage entitling them to coverage under the policy."); *Family Tacos, LLC*, 2021 WL 615307, at *9 ("[T]he mere physical presence of the virus on its property does not constitute physical loss

under the policy or Ohio law."); *Bend Hotel Dev. Co.*, 2021 WL 271294 , at *3 ("[E]very court in this district that has interpreted similar provisions under Illinois law has concluded that the virus does not cause 'direct physical loss or damage' to property."); *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, --- F. Supp. 3d ---, 2020 WL 7078735, at *8 (D. Kan. Dec. 3, 2020) (holding that "even assuming that the virus physically attached to covered property, it did not constitute the direct, physical loss or damage required to trigger coverage because its presence can be eliminated").

For instance, in *West Coast Hotel Management, LLC v. Berkshire Hathaway Guard Insurance Companies*, plaintiffs alleged—similar to Plaintiffs here—that they "suffered a temporary loss of economically valuable use of their hotels due to a decrease in patronage or the Executive Orders." 498 F. Supp. 3d at 1239. Plaintiffs did not claim that any property underwent a physical alternation or needed to be repaired, rebuilt, or replaced. *Id.* Rather, plaintiffs conclusively asserted that there was physical damage to their property as a result of the alleged presence of COVID-19 on the property. *Id.* The court concluded that this was insufficient to establish "direct physical loss or damage" under the policy and dismissed the complaint without leave to amend. *Id.* at 1239, 1242.

Similarly, here, Plaintiffs do not identify in their Complaint a single piece of property that underwent a physical alteration such that it needed to be repaired, rebuilt, or replaced.  Instead, Plaintiffs generally allege that COVID-19 "existed on surfaces found within the insureds' premises and surrounding premises, as well as in the breathable air circulating within the insureds' premises and surrounding premises.'" (Compl. ¶ 28-29.) "Conclusory allegations like these are precisely the kind that Rule 8, *Iqbal* and *Twombly* deem insufficient." *Island Hotel Props., Inc.*, 2021 WL 117898, at *4 (granting defendant's motion to dismiss where plaintiff's complaint similarly alleged

only that COVID-19 was "present" at the insured properties); *see also 15 Oz Fresh & Healthy Food LLC*, 2021 WL 896216, at *6 (same). "A plaintiff cannot escape the policy-required need to sustain a physical loss of or damage to property by simply asserting a fact-free allegation that the requisite damage was sustained." *Café Int'l Holding Co. LLC*, 2021 WL 1803805, at *9.

Plaintiffs also allege that, "[g]iven the nature of the Plaintiffs' various businesses, the spread of Covid-19 [*sic*] virus led to significant *economic* damages." (Compl. ¶ 27 (emphasis added.)) Specifically, Plaintiffs experienced a "decrease in reservations and related income as a result of the desire of customers to avoid contracting the virus while visiting Plaintiffs' property." (Compl. ¶ 33.) But the commercial property insurance Policy issued to Plaintiffs simply does not cover a "decrease in reservations" due to "the desire of customers to avoid contracting" COVID-19 or any other consumer preference.  No amendment to the Complaint could cure its defects.

## B. THE POLICY'S VIRUS EXCLUSION BARS COVERAGE FOR PLAINTIFFS' ALLEGED LOSS.

The Court need not even reach the question of whether Policy exclusions apply because Plaintiffs have failed to adequately plead facts sufficient to establish coverage. *See Michael Cetta*, 2020 WL 7321405 at *13 n.5.  Even if Plaintiffs were able to demonstrate coverage for their insurance claim under the Policy (which they cannot), the Policy bars coverage for "any loss, damage, or expense caused directly or indirectly by or resulting from" a virus "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (Ex. A, Property Coverage § IV.A.1.h.)

Since Plaintiffs themselves allege that COVID-19 is, in fact, a virus, (*see* Compl. ¶ 27), their insurance claim is barred by the Policy's Virus Exclusion. *See Mena Catering, Inc. v. Scottsdale Ins. Co.*, --- F. Supp. 3d ---, 2021 WL 86777, at *9 (S.D. Fla. Jan. 11, 2021); *Raymond H Nahmad DDS PA*, 499 F. Supp. 3d at 1190; *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of*

*Am.*, 483 F. Supp. 3d 1189, 1192 (M.D. Fla. 2020); *see also Michael J. Redenburg, Esq. PC v. Midvale Indem. Co.*, --- F. Supp. 3d ---, 2021 WL 276655, at *8 (S.D.N.Y. Jan. 27, 2021); *100 Orchard St., LLC v. Travelers Indem. Ins. Co. of Am.*, Cause No. 1:20-cv-08452, ECF No. 32 (S.D.N.Y. June 8, 2021)[9]; *Sullivan Cnty. Fabrication Inc.*, No. 20-cv-5750, Transcript at 42. The Court should dismiss the Complaint for this reason alone as any attempt to amend the Complaint could not overcome the effect of this Policy exclusion as a matter of law.

### C. PLAINTIFFS CANNOT OTHERWISE ESTABLISH COVERAGE UNDER THE POLICY'S CIVIL AUTHORITY AND COMMUNICABLE DISEASE PROVISIONS.

Even if the presence of the coronavirus at Plaintiffs' facilities caused a direct physical loss or damage to property (which it does not) and the Policy's Virus Exclusion did not bar coverage for Plaintiffs' claim (it does), Plaintiffs still cannot satisfy the prerequisites for coverage under the Policy's Civil Authority and Communicable Disease Coverage.

#### 1. Plaintiffs have not pleaded the prerequisites for Civil Authority Coverage.

In order to meet their burden to establish coverage under the Policy's Civil Authority provision, Plaintiffs must plausibly allege facts sufficient to show (1) direct physical loss or damage to property *other than* at an Insured Property (2) that was caused by a "covered cause of loss" (3) which gave rise to a civil authority order (4) that prohibits access to the Insured Property (5) causing Plaintiffs to necessarily suspend operations. (*See* Compl. ¶ 42(2); Ex. A, Property Coverage § V.E. 2.)

As explained in Section A above, Plaintiffs have failed to allege facts sufficient to show "direct physical loss or damage" to any property. This falls far short of Plaintiffs' burden to "allege

---

[9] A copy of Judge Furman's Opinion in *100 Orchard Street LLC, v. The Travelers Indemnity Insurance Company of America*, Cause No. 20-cv-8452 is attached hereto for the Court's convenience as Exhibit E.

with specificity that a property within the immediately surrounding area *other than the [property]* was damaged by a covered loss." *15 Oz Fresh & Healthy Food LLC*, 2021 WL 892216, at *7 (emphasis added); *see also Café Int'l Holding Co.*, 2021 WL 1803805, at *12 (no coverage under the civil authority provision where plaintiff failed to allege "that the authorities' orders resulted from damage to property elsewhere"). Courts have repeatedly rejected claims under civil authority coverage provisions where plaintiffs merely point to the widespread effects of the COVID-19 pandemic without pointing to specific physical damage to a neighboring property. *See, e.g.*, *AE Mgmt., LLC*, 2021 WL827192, at *4 (granting defendant's motion to dismiss with prejudice where plaintiffs failed to allege that any property *away from* their premises sustained any physical damage from COVID-19); *Café La Trova LLC*, 2021 WL 602585, at *10 (same); *Michael Cetta, Inc.*, 2020 WL 7321405, at *11 (citing *Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, 2020 WL 6562332, at *8 (N.D. Cal. Nov. 9, 2020) ("In the absence of any allegation that any specific neighboring property to a Sand People property *in Hawaii* had actual coronavirus exposure, this coverage has not plausibly been triggered.")); *W. Coast Hotel Mgmt., LLC*, 498 F. Supp. 3d at 1240 (finding unsupported statements like "the properties that are damaged are in the immediate area of the hotels" insufficient to state a claim under the civil authority provision).

Here, Plaintiffs do not identify any property at all that suffered "direct physical loss or damage." Instead, Plaintiffs merely allege in conclusory fashion that there was "damage" to "premises within the vicinity of the various insured locations" and that such damage existed "on surfaces found within the insureds' premises and surrounding premises, as well as in the breathable air circulating within the insureds' premises and surrounding premises." (Compl. ¶¶ 28-29.) Plaintiffs do not identify any nearby property that suffered any type of physical loss or damage—

nor could they, because COVID-19 does not physically alter property. Consequently, there is simply no coverage for Plaintiffs' claim under the Policy's Civil Authority provision.

Even if Plaintiffs did identify a neighboring property exposed to COVID-19 (which would still not be physical damage anyway), the Emergency Orders on which Plaintiffs rely did not *prohibit* access to the Insured Property and, therefore, Civil Authority coverage remains unavailable to Plaintiffs. In *Café International Holding Company LLC*, for example, the policyholder apparently relied upon the same Emergency Orders cited in Plaintiffs' Complaint here that "imposed a temporary closure of on-premises food service, permitting takeout and delivery." 2021 WL 1803805, at *13. The court held that plaintiff's civil authority claim failed as a matter of law because the orders never "prohibited access to Café International's restaurant; at most, the civil authority orders temporarily restricted Café International from serving food on-premises, while allowing the restaurant to provide delivery, pick-up and takeout services, and give access to employees and staff." *Id.* Other Courts have reached the same result when faced with virtually identical orders. *See Michael Cetta, Inc.*, 2020 WL 7321405, at *12 (dismissing plaintiff's claim for civil authority coverage where government order only limited restaurants like plaintiff's to "take-out and delivery items" and did not prevent delivery workers, restaurant employees, or customers to access the address); *Summit Hospitality Grp., Ltd.*, 2021 WL 831013, at *4 ("Although the executive orders identified in the complaint may have restricted access to plaintiff's business locations, for example by preventing or restricting in-person dining, restricted access is not the same as denied access."); *Hair Studio 1208, LLC, et al.*, 2021 WL 1945712, at *10 (plaintiff's allegation that it lost access to its hair salon for its intended purpose was insufficient to meet the requirements for "prohibition" under the civil authority provision); *Promotional Headwear*, 2020 WL 7078735, at *9-10 ("Having the indirect effect of restricting or hampering

access to the business is insufficient."); *Johnson*, 2021 WL 37573, at *7 (rejecting plaintiffs' claim for civil authority coverage where the orders never specifically prohibited plaintiffs from accessing their offices or from offering limited procedures during the pandemic); *Café La Trova LLC*, 2021 WL 602595, at *11 ("Merely restricting access . . . without completely prohibiting access does not trigger coverage under the Policy's Civil Authority provision.").

Here, the Emergency Orders expressly allowed hotels and restaurants to remain operational, albeit with certain limited restrictions. (*See* Exs. B-C.) In fact, Emergency Order No. 03-20 expressly stated that "employees, janitorial personnel, contractors, and delivery personnel *shall be allowed access*" to restaurants and any other alcohol and/or food service business establishment (with seating for more than eight people). (Ex. B (emphasis added).) Throughout the pandemic, therefore, Plaintiffs were able to physically access the Insured Properties and operate. As such, there is no coverage for Plaintiffs' insurance claim under the Civil Authority provision of the Policy.

### 2. Plaintiffs have not pleaded the prerequisites for Communicable Disease Coverage.

In order to meet their burden to establish coverage under the Policy's Communicable Disease provision, Plaintiffs must plausibly allege facts sufficient to show (1) physical loss or damage to insured property (2) that was caused by or resulting from an "event in which a public health authority has ordered that [an insured property] be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such [property]. (Compl. ¶ 42(2); Ex. A, Property Coverage §§ V.F.1, XIV.A.11.)

First, as demonstrated in Section A above, Plaintiffs have not pleaded (and cannot plead) facts sufficient to show physical loss or damage to the Insured Properties. For that reason alone, there is no coverage for Plaintiffs' insurance claim under the Communicable Disease provision.

Page **22** of 24

Second, Plaintiffs fail to describe any instance in which a public health authority ordered that the Insured Properties be evacuated, decontaminated, or disinfected. (*See* Compl. ¶¶ 42(2)-44.) First, Plaintiffs cite only to Emergency Orders issued by ***civil*** authorities, not public health authorities (*see* Ex. A, Property Coverage § XIV.A.59). Second, the Miami-Dade County Emergency Orders referenced in the Complaint applied generally to every similar business in the county regardless of whether there was any evidence of a disease outbreak at any specific location. Third, the Emergency Orders did not contain any instruction for evacuation, decontamination or disinfection. Rather, the Emergency Orders expressly allowed businesses of the same type as Plaintiffs (i.e. hotels and restaurants) to remain open with employees free to access the premises. Plaintiffs admit in the Complaint that their businesses have remained physically open throughout the pandemic. (Compl. ¶ 33.) Where there has not been any order by a public health authority to evacuate, decontaminate, or disinfect the Insured Properties, there has been no "communicable disease event" and, therefore, no coverage is available to Plaintiffs under the Policy's Communicable Disease provision.

## V.  CONCLUSION

National Surety respectfully requests that the Court grant National Surety's Motion to Dismiss for the reasons set forth in this Memorandum and dismiss Plaintiffs' Complaint in its entirety. Because any amendment to the Complaint would be futile, National Surety respectfully requests that the Court Dismiss the Complaint with prejudice and grant such other relief the Court deems just and proper.

Respectfully Submitted,

Dated: June 10, 2021

*/s/ Anna K. Finger*

**DLA PIPER LLP (US)**

Michael D. Hynes
Anna K. Finger
1251 Avenue of the Americas
27th Floor
New York, NY 10020
Tel: (212) 335-6474
michael.hynes@us.dlapiper.com
anna.finger@us.dlapiper.com

*Attorney for Defendant*
*National Surety Corp.*

## <u>CERTIFICATE OF SERVICE</u>

     I certify that on June 10, 2021, a copy of the foregoing document was served on all counsel of record via the Court's ECF system and/or email.

*/s/ Anna K. Finger             *
*Attorney for Defendant*
