# Exhibit E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
100 ORCHARD STREET, LLC, :
:
Plaintiff, :
: 20-CV-8452 (JMF)
-v- :
: MEMORANDUM OPINION
THE TRAVELERS INDEMNITY INSURANCE : AND ORDER
COMPANY OF AMERICA, :
:
Defendant. :
:
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

This case is one of many insurance coverage disputes arising out of the COVID-19 pandemic. Plaintiff 100 Orchard Street, LLC ("Orchard Street"), which owns and operates the Blue Moon Hotel (the "Hotel") in New York City, alleges that its business was severely damaged by the COVID-19 virus, which "was present at and within" the Hotel and "render[ed] the premises unsafe," and by restrictions that the State and local governments imposed on travel, non-essential businesses, and gatherings in an effort to slow the spread of the virus. ECF No. 23 ("Am. Compl."), ¶¶ 14, 28-29, 84, 93-99.[1] Orchard Street filed a claim for its losses under a commercial insurance policy (the "Policy") issued by the Travelers Indemnity Company of America ("Travelers"). *Id.* ¶¶ 32, 35; *see* ECF No. 23-1 ("Policy"). On July 2, 2020, Travelers denied the claim, stating, as relevant here, that the Business Income, Extra Expense, and Civil Authority Clauses of the Policy — each of which covers loss of business income under certain

---

[1] These facts — which are drawn from the Amended Complaint, documents incorporated by reference therein, and materials of which the Court may take judicial notice — are assumed to be true for purposes of this motion. *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

circumstances — did not apply to Orchard Street's claimed losses and that, even if they did, the losses were expressly excluded from coverage under the Policy's Virus Exclusion Clause. Am. Compl. ¶ 35; ECF No. 23-2, at 1-4; *see also* Policy 44-45, 135.[2] This litigation — in which Orchard Street seeks a declaration that the Policy "includes coverage for losses caused by the Coronavirus" and by "the Civil Authority Orders" issued in response thereto, Am. Compl. ¶ 161 — followed. Travelers now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint. ECF No. 24.[3]

Travelers is entitled to dismissal because, even drawing all reasonable inferences in Orchard Street's favor, the Amended Complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For starters, it is doubtful that the alleged physical presence of the COVID-19 virus on surfaces and in the air constitutes either "direct physical loss of or damage to property" at the Hotel, as is required to trigger the Policy's Business Income and Extra Expense Clauses, or "damage to property other than property at the [Hotel]," as is required to trigger its Civil Authority Clause. *Id.* at 44-45.[4] As

---

[2]  Citations to the Policy refer to the page numbers automatically generated by the Court's ECF system.

[3]  The parties agree that New York law governs interpretation of the Policy, *see* ECF No. 26 ("Def.'s Mem."), at 9; ECF No. 28 ("Pl.'s Opp'n"), at 10, which "is sufficient to establish choice of law," *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016) (internal quotation marks omitted).

[4]  The Civil Authority Clause also requires that "[a]ccess" to the insured premises was "prohibited by civil authority." Policy 45. Orchard Street repeatedly alleges that the restrictions imposed by the State and local governments "prohibited access" to the Hotel. Am. Compl. ¶¶ 20, 30, 50, 101, 128-29, 147-48, 150-51; *see also id.* ¶ 102 ("As of March 22, 2020, Governor Cuomo ordered all 'non-essential businesses' statewide to be closed." (citing N.Y. Exec. Order No. 202.6 (Mar. 18, 2020))). But official guidance interpreting Executive Order 202.6 — of which the Court can take judicial notice, *see Reynolds v. City of Mount Vernon*, No. 14-CV-1481 (JMF), 2015 WL 1514894, at *1 n.1 (S.D.N.Y. Apr. 1, 2015) — defined hotels as essential businesses. *Governor Cuomo Issues Guidance on Essential Services Under The 'New York State on PAUSE' Executive Order*, N.Y. State (Mar. 20, 2020), https://www.governor.ny.

other courts in this District have persuasively reasoned, "COVID-19 damages lungs, not property." *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co.*, No. 20-CV-3350 (PGG) (RWL), 2021 WL 1034259, at *9 (S.D.N.Y. Mar. 18, 2021) (citing *Social Life Magazine v. Sentinel Ins. Co.*, No. 20-CV-3311 (VEC), 2020 WL 2904834 (S.D.N.Y. May 14, 2020)). Put differently, while the presence of COVID-19 may render property potentially harmful to people, it does not constitute harm *to* the property itself. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 571 (2002) (defining "damage" as "injury or harm *to* person, property, or reputation" (emphasis added)). Thus, it is unsurprising that most courts that have decided the issue have held that the physical presence of COVID-19 does not constitute property loss or damage within the meaning of insurance policies like the one here.[5]

Ultimately, however, the Court need not and does not decide that question — which Travelers addresses only in a footnote, *see* Def.'s Mem. 7 n.5 — because the Policy contains a Virus Exclusion Clause that independently and unambiguously bars coverage of Orchard Street's business losses at issue. *See* Def.'s Mem. 11-14. The Clause, which modifies all coverage under

---

gov/news/governor-cuomo-issues-guidance-essential-services-under-new-york-state-pause-executive-order. Accordingly, access to the Hotel was not "prohibited."

[5] *See, e.g.*, *Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Ins. Co. of the Midwest*, No. 20-CV-2777 (KAM) (VMS), 2021 WL 1091711, at *4 (E.D.N.Y. Mar. 22, 2021); *Food for Thought Caterers Corp. v. Sentinel Ins. Co.*, — F. Supp. 3d —, No. 20-CV-3418 (JGK), 2021 WL 860345, at *5 (S.D.N.Y. Mar. 6, 2021); *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, No. 20-CV-10850 (NMG), — F. Supp. 3d —, 2021 WL 858378, at *3-4 (D. Mass. Mar. 5, 2021); *15 Oz Fresh & Healthy Food LLC v. Underwriters at Lloyd's London Known as Syndicates AML 2001, WBC 5886, MMX 2010, & SKB 1897*, — F. Supp. 3d —, No. 20-CV-23407, 2021 WL 896216, at *6 (S.D. Fla. Feb. 22, 2021); *R.T.G. Furniture Corp. v. Hallmark Speciality Ins. Co.*, No. 8:20-CV-2323-T-30 (AEP), 2021 WL 686864, at *2-3 (M.D. Fla. Jan. 22, 2021); *Tappo of Buffalo, LLC v. Erie Ins. Co.*, No. 20-CV-754 (V) (Sr), 2020 WL 7867553, at *4 (W.D.N.Y. Dec. 29, 2020); *Uncork & Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878, 883-84 (S.D.W. Va. 2020), *amendment denied*, No. 20-CV-401, 2021 WL 966886 (S.D.W. Va. Mar. 15, 2021); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 693-94 (N.D. Ill. 2020), *reconsideration denied*, No. 20-CV-2160, 2021 WL 83758 (N.D. Ill. Jan. 10, 2021).

the Commercial Property Coverage Part of the Policy, including the Business Income, Extra Expense, and Civil Authority Clauses, states as follows: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Policy 135; *see id.* at 5, 44-45.[6]  It is undisputed that COVID-19 is a viral disease, as Orchard Street acknowledges in its pleadings. *See, e.g.*, Am. Compl. ¶¶ 14, 59 (describing "the COVID-19 virus" and "[t]he virus that causes COVID-19"); *id.* ¶ 15 (alleging that infection with COVID-19 "may produce deadly results to human beings").  And Orchard Street attributes its alleged losses to "[t]he COVID-19 pandemic" generally; the "continuous presence of the coronavirus," i.e., the virus that causes COVID-19, "on or around [the Hotel's] premises"; and government orders that "were issued in direct response to both the spread and physical presence of COVID-19 on persons and property." *Id.* ¶¶ 51, 100-101, 152.  It follows that Orchard Street's business losses were plainly "caused by," or at least "result[ed] from," a "virus" that "is capable of inducing physical distress, illness or disease," Policy 135, and are unambiguously excluded from coverage under the Policy.

Orchard Street's arguments to the contrary are unpersuasive.  First, Orchard Street argues that the "legal proximate cause" of its losses was the government orders issued in response to the pandemic, not the virus itself.  Pl.'s Opp'n 7.  Orchard Street further notes that the Policy — unlike some other insurance contracts that courts have considered in the COVID-19 context — does not contain "anti-concurrent causation language," meaning language specifying that losses

---

[6]     In the Amended Complaint, Orchard Street also quotes from a separate provision of the Policy covering Building and Personal Property.  Am. Compl. ¶¶ 24, 110; *see* Policy 24 (covering "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss").  The Building and Personal Property Clause also falls within the Commercial Property Coverage Part of the Policy and is thus subject to the Virus Exclusion Clause.  *See* Policy 5, 24.

4

caused by a virus are excluded from coverage regardless of any other causes that may have contributed to the loss. *Id.* at 8. Be that as it may, COVID-19 is the "efficient proximate cause" of any business losses resulting from government restrictions imposed in an effort to contain the virus. "The efficient proximate cause of a loss is the cause that originally sets other events in motion," although courts must not "trace events back to their metaphysical beginnings." *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 48 (2d Cir. 2006) (internal quotation marks omitted). The inquiry is "whether the parties contemplated that the exclusion would apply in a circumstance such as that presented," in light of "the reasonable expectation and purpose of the ordinary business person when making an ordinary business contract." *Album Realty Corp. v. Am. Home Assur. Co.*, 607 N.E.2d 804, 805 (N.Y. 1992) (cleaned up) (quoting *Bird v. St. Paul Fire & Marine Ins. Co.*, 120 N.E. 86, 87 (N.Y. 1918) (Cardozo, J.)). Here, a reasonable business person would plainly contemplate that an exclusion for losses "caused by or resulting from any virus" would extend to losses caused by immediate efforts to mitigate a viral outbreak. In short, "there is no genuine dispute that the activity of a virus, namely COVID-19, set government restrictions in motion, and is therefore the efficient proximate cause of [Orchard Street's] claimed losses." *BA LAX, LLC v. Hartford Fire Ins. Co.*, — F. Supp. 3d —, No. 2:20-CV-6344 (SVW) (JPR), 2021 WL 144248, at *4 (C.D. Cal. Jan. 12, 2021); *accord Causeway Auto., LLC v. Zurich Am. Ins. Co.*, No. 20-CV-8393 (FLW) (DEA), 2021 WL 486917, at *6 (D.N.J. Feb. 10, 2021); *Edison Kennedy, LLC v. Scottsdale Ins. Co.*, — F. Supp. 3d —, No. 8:20-CV-1416-T-02 (SPF), 2021 WL 22314, at *8 (M.D. Fla. Jan. 4, 2021).

Second, Orchard Street argues that the Virus Exclusion Clause does not explicitly apply to losses caused by "a national state of disaster like the current pandemic." Pl.'s Opp'n 7. But in the context of a viral pandemic, "the word 'pandemic' describes a disease's geographic

5

prevalence"; "it does not replace disease as the harm-causing agent." *Boxed Foods Co. v. Cal. Cap. Ins. Co.*, 497 F. Supp. 3d 516, 523 (N.D. Cal. 2020), *as amended* (Oct. 27, 2020); *see also Michael J. Redenburg, Esq. PC v. Midvale Indem. Co.*, — F. Supp. 3d —, No. 20-CV-5818 (PAE), 2021 WL 276655, at *8 n.5 (S.D.N.Y. Jan. 27, 2021) ("[T]he COVID-19 pandemic is simply a large-scale outbreak of a virus."). In rejecting the same argument that Orchard Street advances here, another district court persuasively likened it to an argument "that a coverage exclusion for damage caused by fire does not apply to damage caused by a very large fire." *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, 498 F. Supp. 3d 1233, 1242 (C.D. Cal. 2020) (internal quotation marks omitted). Although it may be true that other insurance contracts include provisions expressly disclaiming losses caused by "pandemics and epidemics," as Orchard Street contends, Pl.'s Opp'n 7, "the fact that [an insurer] could have used *even more* specific language does not [necessarily] render ambiguous the language that [it] actually used," *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, 496 F. Supp. 3d 1029, 1041 (W.D. Tex. 2020).

Finally, Orchard Street cites *Urogynecology Specialist of Florida LLC v. Sentinel Insurance Co.*, 489 F. Supp. 3d 1297 (M.D. Fla. 2020), for the proposition that "[i]t is unclear that the Virus or Bacteria endorsement would apply as to a viral pandemic." Pl.'s Opp'n 8. That case, however, appears to be an outlier. *See, e.g., Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, 499 F. Supp. 3d 1178, 1188-90 (S.D. Fla. 2020) (interpreting the same language to exclude coverage for losses arising from COVID-19); *Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 427 (E.D. Pa. 2020) (same); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 488 F. Supp. 3d 904, 907 (N.D. Cal. 2020) (same). It is also distinguishable, as the clause at issue stated that the insurer "[would] not pay for loss or damage caused directly or indirectly by . . .

6

[the p]resence, growth, proliferation, spread, or any activity of 'fungi,' wet rot, dry rot, bacteria or virus." *Urogynecology Specialist of Fla.*, 489 F. Supp. 3d at 1301 (cleaned up).  In holding that the clause did not unambiguously apply to COVID-19, the court reasoned in relevant part that COVID-19 "does not logically align with the grouping of . . . other pollutants." *Id.* at 1302. That is not the case here here because the Virus Exclusion Clause includes "microorganism[s] that induce[] or [are] capable of inducing physical distress, illness or disease," and does not include microorganisms that primarily cause structural damage.  Policy 135.

For the foregoing reasons, Travelers's motion to dismiss is GRANTED, and Orchard Street's Amended Complaint is dismissed in its entirety.  Moreover, the Court declines to grant Orchard Street leave to amend its Amended Complaint *sua sponte*.  Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (internal quotation marks omitted). Here, the problems with Orchard Street's claims are substantive, so amendment would be futile. *See, e.g.*, *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (citing cases).  Moreover, Orchard Street does not request leave to amend or suggest that it is in possession of facts that would cure the problems with its claims.  *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if [it] fails to specify how amendment would cure the pleading deficiencies in [its] complaint."); *accord TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).  Finally, the Court granted Orchard Street leave to amend its original complaint in response to Travelers's motion to dismiss and explicitly warned that it would "not be given any further opportunity to amend the complaint to address issues raised by the motion to

7

dismiss." ECF No. 13; *see, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*." (citing cases)).

The Clerk of Court is directed to terminate ECF No. 24, to enter judgment for Defendant consistent with this Opinion and Order, and to close the case.

SO ORDERED.

Dated: June 8, 2021
       New York, New York

_____
                              JESSE M. FURMAN
                              United States District Judge