# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------

| | | |
|---|---|---|
| ABBEY HOTEL ACQUISITION, LLC, | : | Civil Action No. 1:21-cv-03506 |
| SETAI HOTEL ACQUISITION LLC, SETAI | : | |
| RESORT & RESIDENCE CONDOMINIUM | : | Hon. Valerie E. Caproni |
| ASSOCIATION, INC, and SETAI | : | |
| VALET SERVICES, LLC, | : | |
| | : | **<u>Oral Argument Requested</u>** |
| Plaintiffs, | : | |
| | : | |
| -against- | : | |
| | : | |
| NATIONAL SURETY CORPORATION, | : | |
| | : | |
| Defendant. | : | |

------------------------------------------------------------------------

<br>

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
### <u>TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT</u>

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**………………………………………………………iii

**PRELIMINARY STATEMENT**……………………………………………………1

**STATEMENT OF FACTS**…………………………………………………………2

**ARGUMENT**……………………………………………………………………...6

  **I.**  **Choice of Law**……………………………………………………6

  **II.**  **Applicable Standards**……………………………………………7

  **III.**  **The Subject Policy Provides Coverage for Plaintiffs' Losses**…………..9

  **IV.**  **To Interpret The Policy As Defendant Prefers Would Violate Both The Plain Language Of The Subject Policy and Public Policy**………..14

**CONCLUSION**………………………………………………………………..16

## **TABLE OF AUTHORITIES**

**Cases:**

*AEI Life LLC v Lincoln Benefit Life Co.*, 892 F3d 126 (2d Cir 2018)……………………7

*Aetna Casualty & Surety Co. v. Cartmel*, 87 Fla. 495, 100 So. 802 (1924)………………9

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)………………………………………………8

*Auten v. Auten*, 308 N.Y. 155 (1954)……………………………………………………6-7

*Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29 (Fla.2000)…………………………...10

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)…………………………………………8

*Brink's Ltd. v. South African Airways*, 93 F.3d 1022 (2d Cir. 1996)……………………6-7

*Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853 (11th Cir. 2017)…………………8

*City of New York v. Evanston Ins. Co.*, 39 A.D.3d 153 (2nd Dept. 2007)………………10

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)……………………………7

*Dahl-Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379 (11th Cir. 1993)………..11

*Disa v. Ashley Furniture Industries, Inc.*, 131 F.Supp.3d 1316 (M.D.Fla. 2015)……10-11

*Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So.2d 938 (Fla.1979)…..11

*Garcia v. Federal Ins. Co.*, 969 So.2d 288 (2007)………………………………………..9

*Gregory v. Daly*, 243 F.3d 687 (2d. Cir. 2001)………………………………………....8

*In re Coudert Bros. LLP*, 673 F3d 180 (2d Cir 2012)……………………………………6

*In re Gardinier, Inc.*, 831 F.2d 974 (11th Cir.1987)……………………………………..11

*In re Payroll Express Corp.*, 216 B.R. 344 (S.D.N.Y. 1997)……………………………..7

*In re WRT Energy*, No. 96 CV 3610, 2005 WL 323729 (S.D.N.Y. Feb. 9, 2005)………..8

*Luna v. North Babylon Teachers Organization*, 11 F.Supp. 3d (E.D.N.Y. 2014)………..8

*National Surety Co. v. Williams*, 74 Fla. 446, 77 So. 212 (1917)…………………………9

*New York Life Ins. Co. v. Kincaid*, 136 Fla. 120 (1939)………………………………9, 10

*Olin Corp. v. Ins. Co. of North America*, 743 F. Supp. 1044 (S.D.N.Y. 1990)…..6-7, 8, 10

*Purrelli v. State Farm Fire and Cas. Co.*, 698 So.2d 618 (1997)………………...11, 13-14

*Reid v. United States*, 2020 WL 3256331 (E.D.N.Y. 2020)………………………………9

*Selective Ins. Co. of America v. County of Rensselaer*, 26 N.Y.3d 649 (2016)…………..9

*Tarshis v. Riese Org.,* 211 F.3d 30 (2d Cir. 2000)………………………………………...8

*Taurus Holdings, Inc. v. United States Fidelity & Guaranty Co.*,
    913 So.2d 528 (Fla.2005)………………………………………………………………9

*Tire Kingdom, Inc. v. First S. Ins. Co.*, 573 So.2d 885 (Fla. 3d DCA 1990)…………….11

*Vtech Holdings Ltd. v. PriceWaterhouseCoopers LLP*,
    348 F. Supp. 2d 255 (S.D.N.Y. 2004)………………………………………..7-8

*Zucker For BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*,
    856 F.3d 1343 (11th Cir. 2017)……………………………………………11

## **Statutes:**

Miami-Dade County Charter §2.02……………………………………………...14-15

## **Other Sources:**

"Evacuate,"Dictionary.com,
    *available at* https://www.dictionary.com/browse/evacuate……………………..15

"Evacuate," Merriam-Webster Dictionary
    *available at* https://www.merriam-webster.com/dictionary/evacuate…………...15

"Evacuate," Oxford-English Dictionary, *available at*
    https://www.oxfordlearnersdictionaries.com/us/definition/english/evacuate…...15

## PRELIMINARY STATEMENT

Plaintiffs Abbey Hotel Acquisition, LLC, Setai Hotel Acquisition, LLC, Setai Resort and Residence Condominium Association Inc. and Setai Valet Services, LLC (hereinafter collectively "Plaintiffs") submit this memorandum of law in opposition to the motion filed by Defendant National Surety Corporation ("National Surety" or "Defendant"), which seeks an Order, pursuant to Federal Rules of Civil Procedure 12(b)(6), dismissing Plaintiffs' Complaint for failure to state a claim. As set forth in detail herein, Plaintiffs' Complaint has been properly plead based on the coverages afforded under the Subject Policy and the motion therefore should be denied in all respects.

While Defendant seeks to characterize its motion, and the relief sought herein, as just one in a long line of cases wherein the court has dismissed first party insurance claims seeking coverage for losses stemming from Covid-19 and its effects, such a characterization is disingenuous. As detailed below, not only are the allegations of physical loss or damage backed up by detailed expert analysis as to the nature of Covid-19 and the manner in which it was believed to interact with both space and property in March 2020, when Plaintiff's property was constructively shut down, but this specific policy contains various coverage grants and provisions not found in the myriad of other cases cited by Defendant. As a result, the line of precedent, whether relying on New York or Florida case law, does nothing to support dismissal herein. Rather, the ambiguities contained in the various coverages contained in the Subject Policy (as interpreted by Defendant), independently justifies a denial of the instant motion.

Among the coverages contained in the Subject Policy is a coverage grant wherein Defendant has explicitly agreed to pay for losses resulting from "communicable disease," which

the policy explicitly defines to include "virus." Furthermore, insofar as Defendant contends that the Subject Policy contains a blanket exclusion for all damages resulting from a "virus", the "communicable disease" coverage which specifically responds to orders issued by government officials due to the presence of a "virus" would make such coverage illusory and gut the additional coverages and protections that Plaintiffs have paid for.

Defendant also attempts to extricate itself from the "communicable disease coverage" by suggesting that the Order which would trigger coverage had to have banned occupancy from the subject properties. Defendant goes onto suggest, without shame or trepidation, that because hotels were permitted to remain open to house emergency medical personnel and first responders so that they were be near the hospitals, the insured has forfeited this coverage. Not only does this argument ignore the express language of the policy, which provides coverage for "suspension" of business, which is defined as "the <u>slowdown</u> or cessation of business," (emphasis added) as the result of a "communicable disease event," but the Subject Policy does not require the prohibition of entry of all guests in order for coverage to be maintained. Finally, even if the coverage were to be read as to require the Subject Properties to be uninhabited, the application of such an interpretation to the facts at bar would be an affront to public policy, given the fact that Plaintiffs kept their hotel open to first responders as a result of a direct request from city officials. Accordingly, not only is Defendant's position repugnant but may in fact lead to regulatory review if such a position were to ever be upheld.

## <u>STATEMENT OF FACTS</u>

The tremendous impact of the coronavirus, specifically SARS-CoV-2 ("Covid-19") is well-known within the public consciousness, as individuals continue to wear masks and thousands

have been vaccinated or are seeking to be vaccinated daily. However, no matter what people have done to protect themselves, more Americans have died of the coronavirus than were killed in the Second World War. Not only are the number of deaths staggering, but the financial impacts on the United States have been no less devastating.

For good and valuable consideration, Plaintiffs purchased an "all risk" property policy of insurance, bearing policy number S 61 DXJ 80996603, a renewal of a prior policy bearing policy number S 61 DXJ 80987285 ("Subject Policy"), to protect themselves from fortuitous causes of loss. *See* Affirmation of Joshua L. Mallin, Esq., Exhibit A. The Subject Policy provides coverage for all risks of physical loss or damage in the amount of $158,710,000.00, including but not limited to coverage for the loss of business income in the amount of $10,000,000.00 for each loss. The Subject Policy also provides, amongst other coverages $2 million in Civil Authority Coverage and 365 days of Extended Business and Extra Expense Coverage. The Property Coverage and Business Income coverage sections of the policy both extend 1,000 feet beyond the Subject Premises itself. *See* Complaint at ¶ 45-1.[1] Under the heading "Extensions of Coverage Applicable to Property, Business Income, and Extra Expense Coverages," the Subject Policy explicitly provides coverage for "Communicable Disease." Specifically, and in relevant part, the policy indicates:

> 1. Communicable Disease Coverage
> a. (1) We will pay for direct physical loss or damage to Property Insured caused by or resulting from a covered communicable disease event at a location **including the following necessary costs incurred to:**

---

[1] Due to a formatting error, the Complaint includes two sets of paragraphs number 41 through 45. Plaintiffs have utilized the convention of -1 or -2 to clarify which of these inadvertently duplicated paragraphs is being referenced.

(a) Tear out and replace any part of Property Insured in order to gain access to the communicable disease;
(b) Repair or rebuild Property Insured which has been damaged or destroyed by the communicable disease; and
(c) **Mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects the communicable disease.**

2. If the Declarations show a Limit of Insurance for Business Income and Extra Expense Coverage, then we will pay for the actual loss of business income and necessary extra expense you sustain due to the necessary suspension of operations during the period of restoration. The suspension must be due to direct physical loss or damage to property at a location caused by or resulting from a covered communicable disease event

*See* Complaint at ¶ 42-2 (emphasis altered).  The policy defines "communicable disease" as "any disease, bacteria, **or virus** that may be transmitted directly or indirectly from human or animal to a human."  *See* Complaint at ¶ 43-2 (emphasis added).  "Communicable disease event" is likewise defined as "an event in which a public health authority has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such location." *See* Complaint at ¶ 44-2 (emphasis added).  The term "suspension" is defined by the policy as "the slowdown or cessation of your operations, or that a part or all of the described premises is rendered untenable."  While the Subject Policy includes an exclusion for "Mortality and Disease," specifically "Mortality, death by natural causes, disease, sickness, any condition of health, bacteria, or virus," this exclusion obviously cannot be read in a manner that would strip coverage that was specifically added to the Subject Policy.

As this Court undoubtedly is aware, from at least early 2020, the SARS-CoV-2 virus, commonly referred to as "the coronavirus" or "Covid-19" caused a public health emergency throughout the United States, among other nations.  As a result of the pandemic, governments in

4

many locations, including Miami-Dade County, where Plaintiffs' businesses operate, ordered businesses to cease or curtail operations as a direct result of the pandemic.  As detailed in the reports authored by Dr. Michael A. Sulzinski and Dr. Aleksandr Aravkin, *see* Sulzinski Aff. at **Exhibit "B"** and Aravkin Aff. at **Exhibit "B"**, the virus was present in Miami-Dade County in March 2020, and the virus physically contaminated the surfaces and air supplies in the Plaintiffs' premises. *See* Aff. and Report of Dr. Michael A. Sulzinski, at ¶¶ 8-9, **Exhibit "B"**; *see also* Aff. and Report of Dr. Aleksandr Aravkin, at ¶7, **Exhibit "B."**[2]  Dr. Sulzinski further opines that to a reasonable degree of scientific certainty, the "SARS-CoV-2 virus physically contaminated the physical surfaces and air supplies of" commercial spaces.  *See* Aff. and Report of Dr. Michael A. Sulzinski, at ¶¶ 8-9.  Moreover, as Dr. Sulzinksi wrote:

> Like many other threats to human health and life (for example, formaldehyde, radioactivity, carbon monoxide), SARS-CoV-2 does not physically alter the surfaces on which it settles. Yet, the physical loss is real because the virus is an authentic threat to human life and health, most importantly when the virus is present in droplets and aerosols suspended in the air, which renders that property dangerous and substantially unusable.

*See* Aff. and Report of Dr. Michael A. Sulzinski, Exhibit A at 2.

In light of concerns regarding the health and wellness of the citizens and visitors because of the SARS-CoV-2 virus, Florida declared a state of emergency on March 9, 2020.  Miami-Dade County did likewise on March 12, 2020.   The County Mayor for Miami-Dade County thereafter issued an order directing that no new reservations could be accepted at Miami-Dade hotels.  As of March 26. 2020, the order was expanded, such that all "hotel, motels, short-term vacation rentals, and other commercial lodging

---

[2] These reports were previously exchanged with Defendant in its R. 26 expert disclosure.

establishments shall not (i) accept any occupants. regardless of when reservations were made. or (ii) extend existing reservations for persons other than Essential Lodgers." *See* Complaint at ¶ 34.  In other words, all guests other than Essential Lodgers were required to evacuate the hotels, relevantly including the Premises owned by Plaintiffs.  Essential Lodgers, as defined by the order, generally consisted of medical personnel or first responders and those who would be in greater danger if they could not stay in hotels.  The order recited concerns regarding the potential spread of the coronavirus as the reason for the closures.  *See id.*  Similar orders were issued directing the closure of all "restaurants, bars, taverns, pubs, night clubs, banquet halls, cocktail lounges, cabarets, breweries, cafeterias, and any other alcohol and/or food service business establishment with seating for more than eight people." *See id.* at ¶ 35.   Plaintiffs' businesses were required to close or limit operations as a direct result of these orders.

Notwithstanding the fact that Plaintiffs timely notified Defendant of their loss, to date Defendant has refused to pay so much as one penny of Plaintiffs' claim.  This litigation and the instant motion to dismiss follow.

## ARGUMENT

## POINT ONE

## CHOICE OF LAW

"It is well established that a federal court sitting in diversity must generally apply the choice of law rules of the state in which it sits."  *In re Coudert Bros. LLP*, 673 F3d 180, 186 (2d Cir 2012). New York law requires courts to apply the law of the "jurisdiction which has the most significant contacts with the matter in dispute" or "center of gravity" of dispute. *See Olin Corp. v. Ins. Co. of*

*North America*, 743 F. Supp. 1044, 1048 (S.D.N.Y. 1990) *quoting Auten v. Auten*, 308 N.Y. 155,

160 (1954)); *Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1030-1031 (2d Cir. 1996). While

under New York law, "courts will generally enforce choice-of-law clauses," *AEI Life LLC v*

*Lincoln Benefit Life Co.*, 892 F3d 126, 132 (2d Cir 2018) (quotation omitted), the policy at issue

in this dispute does not contain such a provision.  In the context of insurance contracts without a

choice of law provision, the principal factors considered by New York courts have been: "the

location of the insured risk; the insured's principal place of business; where the policy was issued

and delivered; the location of the broker or agent placing the policy; where the premiums were

paid; and the insurer's place of business." *Olin Corp.* 743 F. Supp. at 1049.  "[C]ourts must evaluate

how much weight should be allotted to these factors given the specific facts of each case." *In re*

*Payroll Express Corp.*, 216 B.R. 344, 354 n.5 (S.D.N.Y. 1997).  Defendant contends and Plaintiffs

do not dispute that Florida, as the location of the insured risk, has the greatest interest in this

dispute.  The parties further agree that there are no significant differences between Florida law and

New York law on the relevant points at issue.

## POINT TWO

## APPLICABLE STANDARDS

When considering a Rule 12(b)(6), federal courts must "constru[e] the complaint liberally,

accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in

the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).[3] "The

issue is not whether the plaintiff ultimately will prevail but whether the plaintiff is entitled to offer

---

[3] Defendant contends, and Plaintiffs do not dispute, that Florida substantive law governs the
agreement between the parties.  Where practicable, for the Court's convenience, Plaintiffs have
cited to parallel provisions of New York law, which the parties agree is substantially similar.

evidence to support its claims." *Vtech Holdings Ltd. v. PriceWaterhouseCoopers LLP*, 348 F. Supp. 2d 255, 261 (S.D.N.Y. 2004). "When presented with a Fed. R. Civ. P. 12(b)(6) motion, the Court's task is to assess the legal feasibility of the complaint rather than to weigh the evidence that might be offered in support thereof." *In re WRT Energy,* No. 96 CV 3610, 2005 WL 323729, at *5 (S.D.N.Y. Feb. 9, 2005) (*partial reconsideration granted on unrelated grounds)*.  A court may only dismiss a claim under FRCP 12(b)(6) if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Gregory v. Daly*, 243 F.3d 687, 691 (2d. Cir. 2001) *citing Tarshis v. Riese Org.,* 211 F.3d 30, 35 (2d Cir. 2000).

A party's complaint survives a motion to dismiss when "it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Luna v. North Babylon Teachers Organization*, 11 F.Supp. 3d (E.D.N.Y. 2014) *citing Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 864 (11th Cir. 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). If the factual allegations raise a right to relief above the speculative level, a court should not dismiss a complaint for failure to state a claim. *Id*.

As set forth in the July 23, 2021 Affirmation of Joshua Mallin, Plaintiffs relied on various experts' conclusions, who were consulted in the drafting of the Complaint.[4]  As such, their reports,

---

[4] Nowhere in Rule 8 of the Federal Rules of Civil Procedure is there a requirement that pleadings be sourced to provide authority for allegations.  While Plaintiffs acknowledge that conclusions have to have factual support, to the extent that it is not apparent, the identification of that support would come in response to a motion such as this one.  Accordingly, there is no basis to claim that Plaintiffs were compelled to source its allegations in its Complaint.  Assuming *arguendo* this Court is of the opinion that the science behind the claims of physical loss or damage should have appeared in the Complaint, Plaintiffs would request leave to amend its Complaint to incorporate

which are based on scientific methodology utilizing reasoned analytical conclusions setting forth the science surrounding Covid-19, as well as its ubiquitous presence in Miami-Dade County and Florida in March of 2020, are documents to be considered and assessed by this Court in assessing the efficacy of the pleadings.  Accordingly, and as detailed therein, the effect of Covid-19 on the insureds' premises successfully triggers the various coverages provided for by the Subject Policy. As such, in order for Defendant to be successful on its motion, this Court would be compelled to engage in fact finding, a function which caselaw prohibits. *Reid v. United States*, 2020 WL 3256331 (E.D.N.Y. 2020).  As such, the Court must liberally consider Plaintiffs' complaint in determining whether Plaintiff has successfully pleaded a cause of action.  Similarly, the Court should not engage in a fact-finding evaluation of policy provisions which are inherently inconsistent on their face.

## POINT THREE

## THE SUBJECT POLICY PROVIDES COVERAGE FOR PLAINTIFFS' LOSSES

"It is a well-recognized rule of construction and interpretation of contracts for insurance that the contract or policy must be liberally construed in favor of the insured so as not to defeat, without plain necessity, his claim to the indemnity which, in making the contract of insurance, it was his purpose and intention to obtain." *See New York Life Ins. Co. v. Kincaid*, 136 Fla. 120 (1939) *citing National Surety Co. v. Williams*, 74 Fla. 446, 77 So. 212; *Aetna Casualty & Surety Co. v. Cartmel*, 87 Fla. 495, 100 So. 802, 35 A.L.R. 1013; *see also Selective Ins. Co. of America v. County of Rensselaer*, 26 N.Y.3d 649, 655 (2016) (internal quotations omitted). "Under Florida

---

the opinions that have been attached in opposition to the current motion and which were also previously disclosed to Defendant in connection with Plaintiffs' expert disclosure notifications.

law, insurance contracts are construed according to their plain meaning."  *See Garcia v. Federal Ins. Co.*, 969 So.2d 288 (2007) *quoting Taurus Holdings, Inc. v. United States Fidelity & Guaranty Co.*, 913 So.2d 528 (Fla.2005).

Similarly, under Florida law, it is well-established that "[w]here two interpretations equally fair may be given, that which gives the greater indemnity will prevail," and that "[i]f one interpretation looking to the other provisions of the contract and to its general object and scope would lead to an absurd conclusion, such interpretation must be abandoned, and that adopted which will be more consistent with reason and probability."  *See New York Life Ins. Co. v. Kincaid*, 136 Fla. 120 (1939); *see also Disa v. Ashley Furniture Industries, Inc.*, 131 F.Supp.3d 1316 (M.D.Fla. 2015) ("If a contract is "susceptible to more than one reasonable interpretation" and cannot be reasonably reconciled, the contract is deemed ambiguous and rules of contract interpretation must be applied."); *Olin Corp. v. American Home Assur. Co.*, 704 F.3d 89, 99 (2nd Cir. 2012) (requiring courts to avoid any interpretation that would "render at least one clause superfluous or meaningless" in construing an insurance policy); *see also City of New York v. Evanston Ins. Co.*, 39 A.D.3d 153, 156 (2nd Dept. 2007) (holding that "'in order for the insurer to prevail, it must demonstrate not only that [the insurance policy's] interpretation is reasonable but that it is the only fair interpretation.'").  "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous." *See Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla.2000).  The rule follows from traditional principles of contract, which require construction against the drafter of the contract, i.e., for insurance policies, the insurer.  *See New York Life Ins. Co. v. Kincaid*, 136 Fla. 120, 127-28 (1939) (denying rehearing of decision affirming verdict for

10

plaintiff insured because the "company selected the terms, provisions and conditions of the contract, and the words by which to express the same, delivered the same, received payments from the assured, and no fault was found with its provisions until a right of action accrued or a liability developed").

To determine whether a policy of insurance is ambiguous, Florida courts look for 'a genuine inconsistency, uncertainty, or ambiguity in meaning [that] remains after resort to the ordinary rules of construction." *See Dahl-Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379, 1382 (11th Cir. 1993), *quoting Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So.2d 938, 942 (Fla.1979). "Where the terms of a contract are ambiguous, the actual intention of the parties-the governing principle of contract construction-becomes a question of fact." *See Disa v. Ashley Furniture Industries, Inc.*, 131 F.Supp.3d 1316, 1320 (M.D.Fla. 2015), *citing In re Gardinier, Inc.*, 831 F.2d 974, 976 (11th Cir.1987).

"When limitations or exclusions completely contradict the insuring provisions, insurance coverage becomes illusory." *Purrelli v. State Farm Fire & Cas. Co.*, 698 So.2d 618, 620 (Fla. 2d DCA 1997). "An insurance policy cannot grant rights in one paragraph and then retract the very same right in another paragraph called an 'exclusion." *Tire Kingdom, Inc. v. First S. Ins. Co.*, 573 So.2d 885, 887 (Fla. 3d DCA 1990). "So when a policy exclusion does swallow up an insuring provision, the Florida Courts conclude that the policy is ambiguous, and resolve that ambiguity by ignoring the exclusion." *Zucker For BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1352 (11th Cir. 2017); *see also Tire Kingdom Inc.*, 573 So.2d at 887 (holding that where language is internally inconsistent, courts must adopt the policy construction that affords the most coverage).

Here, the express language of the policy of insurance provides for coverage for "communicable disease," and explicitly includes coverage for viruses.[5]   Indeed, the precise grant of coverage includes coverage for the period during which operations are suspended to, *inter alia*, "[m]itigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects the communicable disease[.]"   *See* Complaint at ¶ 42-2.   It is true that certain courts, interpreting the phrase "direct physical loss or damage," without more, have reached the conclusion that the phrase requires permanent alteration of property.   Plaintiffs dispute this result, but observe more relevantly that such a construction of the language in this policy would render this explicit grant of coverage for communicable disease illusory.   The term "communicable disease," as used within the Subject Policy, expressly relates to "virus that may be transmitted directly or indirectly from human or animal to a human."   What "permanent alteration" occurs to property when a virus is transmitted "directly . . . from human . . to a human"?   Similarly, it is difficult to conceive of a "permanent alteration" resulting from the mere presence of a communicable disease that a party must close its business to "monitor" or "mitigate."   Consequently, the policy must be interpreted in the only way that makes sense – as a grant of coverage without regarding to any alleged "permanent alteration."

Similarly, under the position taken by Defendant, the presence of a "virus" could never

---

[5] The parties have a larger dispute regarding the use of the phrase "physical loss or damage" as used more globally throughout the Subject Policy and as relates to various additional grants of coverage, but for consideration of the motion to dismiss, it is sufficient for this Court to evaluate whether under <u>any</u> circumstances coverage might exist.   In addition, while the communicable disease is sub-limited in the amount of $1,000,000, if in fact coverage is found under this provision, issues will arise as to whether that allows the insured to trigger other coverage provisions as well, i.e., the extended business interruption coverage.   Those issues, however, are not in front of the court at present and need not be resolved on this motion.

constitute "physical loss or damage" at the insured premises - thus making portions of its Mortality exclusion superfluous. Furthermore, while some courts have concluded that "physical loss or damage" requires some type of "physical alteration",[6] they were not interpreting a policy which provided coverage for ""communicable disease" which it then defines as "any disease, bacteria, **or virus** that may be transmitted directly or indirectly **from human or animal to a human**." *See* Complaint at ¶ 43-2 (emphasis added). Given this language an insured would reasonably conclude that I virus spread from human to human that would trigger a governmental order to shut down its hotel would not further require some type of physical alteration of its property due to such human-to-human interaction.   Such an understanding is further underscored by the fact that the Subject Policy expressly provides coverage for losses incurred to, *inter alia*, "mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects" of "communicable disease," which the Policy defines in part as a "virus."  If a virus can never be the cause of physical loss or damage under this provision, as claimed by Defendant herein, it will have rendered this coverage totally illusory in nature..

To the extent that the Defendant purports to rely on a "virus" exclusion, the law in Florida is clear that a policy cannot simultaneously make an explicit grant of coverage on the one hand and include an exclusion for the same item purportedly covered.  For example, in *Purrelli v. State Farm Fire and Cas. Co.*, 698 So.2d 618 (1997), the Eleventh Circuit dealt with an insurer who had issued a coverage grant for certain intentional torts and simultaneously excluded coverage for intentional acts.  The Eleventh Circuit therefore concluded that the policy was ambiguous as a

---

[6] For the avoidance of doubt, Plaintiffs would contend that courts which taken that this position is also in error, though not relevant for the purposes of the instant motion.

13

matter of law and reversed the trial court's grant of judgment on the pleadings for the insurer.  At bar, Defendant's decision to include both an explicit grant of coverage for viruses and an exclusion for mortality or disease that purportedly applies to virus reflects the same inconsistency that requires denial of the insurer's motion.

Thus, insofar as this Court finds there to be any ambiguity regarding the language of the policy at issue, Defendant's motion to dismiss the Complaint - and, indeed, any subsequent motion for judgment as a matter of law - must be denied.

**POINT FOUR**

**TO INTERPRET THE POLICY AS DEFENDANT PREFERS WOULD VIOLATE BOTH THE PLAIN LANGUAGE OF THE SUBJECT POLICY AND PUBLIC POLICY**

Defendant contends on this motion to dismiss that Plaintiffs cannot allege a loss because the "a public health authority" did not "prohibit" access to the property.  Under the plain language of the Subject Policy, which as discussed *supra* at Point II controls, to establish coverage under the "Communicable Disease" provisions, Plaintiffs need only show that "a public health authority has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such location."  *See* Mallin Aff., Exhibit A at 57 of 69.  The policy defines "public health authority" as "the governmental authority having jurisdiction over your operations relative to health and hygiene standards necessary for the protection of the public."  *See* Mallin Aff., Exhibit A at 65 of 69.  Defendant pretends that the county government does not meet this definition.  To the contrary, the Orders specifically identified by the Plaintiffs in their Complaint were issued by the County Mayor.  *See* Complaint at ¶¶ 34-35.  Pursuant to the Miami-Dade County Charter, the County Mayor has managerial authority over "all administrative departments of the county government" and is the "head of the County for emergency management

14

purposes." *See* Miami-Dade County Charter §2.02.  The Administrative Departments of the county relevantly include a Public Health Trust.  Moreover, the emergency powers of the executive would naturally include health-related emergencies absent specific language to the contrary. Defendant proffers no basis in fact or law for its erroneous conclusion that the County Mayor lacks authority over health in general, nor that it would lack the power to act on an emergency basis in light of an imminent health crisis.  Indeed, the laws of Florida and basic common sense support the contrary conclusion.  *See Machovec v. Palm Beach County*, 310 So.3d 941 (4th Dist. Fla. Jan. 27, 2021) (affirming county executive's authority to issue orders mandating that citizens where face masks in public in light of the coronavirus).

Moreover, Defendant attempts to distract this Court from the plain language of the policy by contending that the governmental orders did not "prohibit access" to the Plaintiffs' premises. The Subject Policy **has no such requirement**.  The Subject Policy instead looks to whether "a location be evacuated, decontaminated, or disinfected[.]"  *See* Mallin Aff., Exhibit A at 57 of 69. Dictionaries define the term "evacuate" to mean "to remove the contents of [or] something from," "to move people from a place of danger to a safer place," or "to remove persons from (a city, town, building, area, etc.) for reasons of safety."  *See* Merriam-Webster Dictionary, "evacuate," *available at* https://www.merriam-webster.com/dictionary/evacuate; Oxford-English Dictionary, "evacuate," *available* *at* https://www.oxfordlearnersdictionaries.com/us/definition/english/evacuate;   Dictionary.com, "evacuate," *available at* https://www.dictionary.com/browse/evacuate.  Given the literal text of the relevant orders, it is beyond reasonable dispute that the Miami-Dade County Orders directed the removal of persons from hotels and restaurants for the purpose of enhancing their safety as a

15

result of an outbreak of a communicable disease.  The Subject Policy expressly contemplates that a business income loss may result from a "slowdown **or** cessation" of the Plaintiffs' operations, i.e., that something less than a full prohibition would be a covered loss.

Moreover, Defendant's position is untenable as a matter of public policy.  When an emergency situation is ongoing, it is in the public's best interest to have first responders in areas that may be unsafe for the general public.  This is because trained individuals with the knowledge to protect themselves beyond the general public's ability to do so and more specifically with the ability to provide aid to untrained individuals, called "Essential Lodgers" under the Miami-Dade County Orders, present a unique situation.  If the Subject Policy is construed in the manner in which Defendant prefers, insured hotels would effectively never be covered for a loss, as it will always be in the public's best interest to have lodging available for first responders during a health crisis.  This would render coverage illusory.  Consequently, Defendant's interpretation cannot be correct and should be rejected by this Court.

## CONCLUSION

Wherefore, Plaintiffs respectfully request that Defendant's motion to dismiss the Complaint be denied in its entirety, that the matter be permitted to proceed to discovery, and for such other and further relief as the Court may find just and proper.

Dated: July 23, 2021
      New York, New York

                                       **WEG AND MYERS, P.C.**
                                       *Attorneys for Plaintiff*

                          By:    /s/_ Joshua L. Mallin_____
                                  Dennis T. D'Antonio, Esq.
                                  Joshua L. Mallin, Esq. (JM0474)

800 Westchester Ave., Suite N-513
Ryebrook, New York 10573
(212) 227-4210

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of July, 2021, a true and correct copy of the

foregoing memorandum of law, together with its supporting affidavits, certifications, and the

exhibits thereto, was served on all counsel of record via ECF and/or email:

DLA PIPER LLP (US)
Michael D. Hynes
Anna K. Finger
1251 Avenue of the Americas
27th Floor
New York, NY 10020
Tel: (212) 335-6474
michael.hynes@dlapiper.com
anna.finger@us.dlapiper.com

*Attorney for Defendants*

/s/ Joshua L. Mallin
Joshua L. Mallin, Esq.

17