# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABBEY HOTEL ACQUISITION, LLC, SETAI HOTEL ACQUISITION, LLC, SETAI RESORT AND RESIDENCE CONDOMINIUM ASSOCIATION, INC. and SETAI VALET SERVICES, LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>NATIONAL SURETY CORPORATION,<br><br>*Defendant*. | Civil Action No. 1:21-cv-03506 |

## DEFENDANT NATIONAL SURETY CORPORATION'S
## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ........................................................................................ 1
II. ARGUMENT ..................................................................................................................... 1
   A. PLAINTIFFS FAILED TO SATISFY THEIR BURDEN TO PLEAD FACTS ESTABLISHING "DIRECT PHYSICAL LOSS OR DAMAGE" ..................................... 1
     1. The Policy Unambiguously Requires Physical Alteration to Property ............................... 1
     2. Plaintiffs Did Not, and Cannot, Plead Any Physical Alteration to the Insured Property . 3
   B. PLAINTIFFS FAILED TO MEET THEIR BURDEN TO ESTABLISH COVERAGE UNDER THE COMMUNICABLE DISEASE PROVISION ........................................... 5
     1. The Communicable Disease Provision is Not Rendered Illusory By Requiring a Showing of Physical Loss or Damage ................................................................................ 5
     2. Plaintiffs Failed to Allege Facts Sufficient to Show a "Communicable Disease Event" as Defined by the Policy ........................................................................................................ 6
   C. PLAINTIFFS' EXPERT REPORTS ARE IMPERMISABLE AND DO NOT CURE THE DEFICIENCIES IN THE COMPLAINT ................................................................. 8
     1. The Court Should Not Consider the Expert Reports Because They are Extraneous to the Complaint ............................................................................................................................. 8
     2. The Expert Reports are Otherwise Inadmissible .................................................................. 9
     3. If Considered, Plaintiffs' Expert Reports Do Not Support Plaintiffs' Claims ................. 10
III. CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*15 Oz. Fresh & Healthy Food LLC v. Underwriters at Lloyd's London*, 2021 WL 896216 (S.D. Fla. Feb. 22, 2021) ................................................................................................................. 3

*Bourgier v. Hartford Cas. Ins. Co.*, Case No. 21-21053-CIV-MORENO, Order Granting Def.'s Mot. to Dismiss (S.D. Fla. Aug. 11, 2021) ...................................................................... 4

*Brass v. Am. Film Techs., Inc.*, 977 F.2d 142 (2d Cir. 1993) ........................................................ 8

*Café Int'l Holding Co. v. Westchester Surplus Lines Ins. Co.*, 2021 WL 1803805 (S.D. Fla. May 4, 2021).................................................................................................................................. 2

*Café La Trova LLC v. Aspen Specialty Ins. Co.*, 2021 WL 602585 (S.D. Fla. Feb. 16, 2021) ...... 4

*Consol. Rest. Ops., Inc. v. Westport Ins. Corp.*, Index No. 450839/2021, Hearing Tr. (S. Ct. N.Y. August 11, 2021) ................................................................................................................ 3

*Garcia v. Fed. Ins.*, 969 So.2d 288 (Fla. 2007) ............................................................................. 2

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985) ....................................................................... 8

*Graspa Consulting, Inc. v. United Nat'l Ins. Co.*, 2021 WL 1540907 (S.D. Fla. Apr. 16, 2021)..2, 3

*Harris v. Voyager Indem. Ins. Co.*, 2007 WL 42854 (M.D. Fla. Jan. 4, 2007) .............................. 2

*Ice House Pub, Inc. v. Westchester Surplus Lines Ins. Co.*, 2021 WL 3169151 (M.D. Fla. July 26, 2021).................................................................................................................................... 2

*Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*, 2021 WL 896216 (S.D. Fla. Jan. 11, 2021) ............................................................................................................................................. 2, 4

*Jannazzo v. United States*, 2016 WL 1452392 (E.D.N.Y. Apr. 13, 2016) .................................... 8

*Kuebel v. Black & Decker (U.S.) Inc.*, 2010 WL 1930659 (W.D.N.Y. May 12, 2010) ................. 9

*Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL 3412974 (S.D. Fla. June 11, 2018) ........................ 4

*McMillan v. New York State Bd. Of Elections*, 2010 WL 4065434 (E.D.N.Y. Oct. 15, 2020) ...... 8

*Mena Catering, Inc. v. Scottsdale Ins. Co.*, 2021 WL 86777 (S.D. Fla. Jan. 11, 2021) ................. 4

*Northwell Health, Inc. v. Lexington Ins. Co.*, 2021 WL 31339991 (S.D.N.Y. July 25, 2021) ....... 7

*Phil. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp.2d 280 (S.D.N.Y. Jan. 14, 2005) ....................... 2

*R.T.G. Furn. Corp. v. Hallmark Specialty Ins. Co.*, 2021 WL 686864 (M.D. Fla. Jan. 22, 2021) . 4

*Runway 84, Inc. v. Certain Underwriters at Lloyd's, London*, 2021 WL 2767079 (S.D. Fla. Mar. 31, 2021) .................................................................................................................................... 3

*Secs. & Exch. Commission v. Am. Growth Funding II, LLC*, 2019 WL 1772509 (S.D.N.Y. Apr. 23, 2019) ................................................................................................................................... 9

*Secs. Inv. Protection Corp. v. Bernard L. Madoff Invest. Secs. LLC*, 581 B.R. 370 (S.D.N.Y. Dec. 22, 2017) .................................................................................................................................. 9

*Shade Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd.*, 2021 WL 1304259 (S.D.N.Y. Mar. 18, 2021) .................................................................................................................................... 2

*Shih v. Petal Card, Inc.*, 2019 WL 11276687 (S.D.N.Y. Aug. 21, 2019) ....................................... 8

*Social Life Magazine, Inc.*, 2020 WL 2904834, Hearing Tr. ...................................................... 3, 7

*Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528 (Fla. 2005) ................................. 2

*Town Kitchen, LLC v. Certain Underwriters at Lloyd's, London*, 2021 WL 768273, at *10 (S.D. Fla. Feb. 26, 2021) ................................................................................................................ 3, 4

**Statutes**

Fla. Stat. § 509.0132 ...................................................................................................................... 6

Fla. Stat. § 509.032 ........................................................................................................................ 6

**Other Authorities**

Dictionary.com, available at: https://www.dictionary.com/browse/evacuate ............................... 7

Oxford Dictionary, available at www.oxfordlearnersdictionaries.com/us/definition/english/evacuate ....................................... 7

**I.     PRELIMINARY STATEMENT**

As both parties acknowledge, the legal question before the Court is whether Plaintiffs' inability to plead facts establishing "direct physical loss or damage" to property is fatal to their claims for coverage under the commercial property policy issued by National Surety (the "Policy"). As this Court predicted, Plaintiffs have failed to climb the "steep hill" before them to plausibly allege the presence of "physical loss or damage" to property as required by the plain language of the Policy. (*See* June 11, 2011 Tr. 10.) Unable to cure this defect by amendment, Plaintiffs resort to claiming that (A) the Policy does not require a requisite showing of "physical loss or damage", and (B) COVID-19's "physical contamination" of the air and surfaces satisfies the "physical loss or damage" requirement. These very arguments, however, have been rejected time and time again by federal district courts in Florida, New York, and nationwide. Finally, Plaintiffs' (improperly submitted) Expert Reports do not cure the inadequacy of their pleadings. Accordingly, the Court should dismiss Plaintiffs' Complaint with prejudice.

**II.    ARGUMENT**

**A.     PLAINTIFFS FAILED TO SATISFY THEIR BURDEN TO PLEAD FACTS ESTABLISHING "DIRECT PHYSICAL LOSS OR DAMAGE"**

**1.     The Policy Unambiguously Requires Physical Alteration to Property**

National Surety moved to dismiss the Complaint because Plaintiffs did not allege any facts demonstrating physical alteration to insured property and, therefore, failed to satisfy the Policy's essential "direct physical loss or damage" prerequisite. (*See* Mot. 11-17.) Rather than amend its Complaint to specifically identify physical loss or damage to property, Plaintiffs contend that the Policy must be read to excuse the physical damage requirement because the Policy is somehow ambiguous. Plaintiffs are wrong.

An insurance policy is a contract that, like other contracts, is construed "according to [its] plain meaning." *Ice House Pub, Inc. v. Westchester Surplus Lines Ins. Co.*, 2021 WL 3169151, at

*1 (M.D. Fla. July 26, 2021) (citing *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 532 (Fla. 2005)). "When a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Id.* (citing *Garcia v. Fed. Ins.*, 969 So.2d 288, 291 (Fla. 2007)).

Here, each of the commercial insurance policy provisions under which Plaintiffs seek coverage requires a showing of "direct physical loss or damage." (*See* Mot. 5, 11, Ex. A §§ I.A, II.A, V.E.6, V.E.2, V.F.1). The policyholder's requirement to make a requisite showing of physical loss or damage in order for coverage to apply is well established and industry standard. *See* 100 Couch on Ins. § 148:46 (most commercial policies tie coverage to some specific physical damage to the property). Recognizing this, courts have repeatedly found the very Policy language presented here to be unambiguous as a matter of law. *See, e.g.*, *Graspa Consulting, Inc. v. United Nat'l Ins. Co.*, 2021 WL 1540907, at *6 (S.D. Fla. Apr. 16, 2021); *Ice House Pub, Inc.*, 2021 WL 3169151, at *2; *Harris v. Voyager Indem. Ins. Co.*, 2007 WL 42854, at *4 (M.D. Fla. Jan. 4, 2007); *see also Shade Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd.*, 2021 WL 1304259, at *6 (S.D.N.Y. Mar. 18, 2021); *Phil. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp.2d 280, 289 (S.D.N.Y. Jan. 14, 2005).

Even Plaintiffs acknowledge that "most of the federal courts have defined what physical loss or damage is." (June 11, 2011 Tr. 5.) That is, "a distinct, demonstrable, *physical alteration of the property*, [that] does not include 'losses that are intangible or incorporeal.'" *Café Int'l Holding Co. v. Westchester Surplus Lines Ins. Co.*, 2021 WL 1803805, at *10 (S.D. Fla. May 4, 2021); *see* Mot. 11-12 (collecting cases). It is well settled under Florida law that there must be some "*physical problem* with the covered property to be a covered loss." *Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*, 2021 WL 896216, at *3 (S.D. Fla. Jan. 11, 2021). In fact, "virtually *every* decision rendered in Florida since the COVID-19 pandemic has reached the same conclusion and required

actual physical harm." *Graspa Consulting, Inc.*, 2021 WL 1540907, at *6. Because the Policy uses plain, unambiguous language, such as having the word "physical" qualify "loss" and "damage," the Court should enforce the "direct physical loss or damage" prerequisite according to its plain terms.

### 2. Plaintiffs Did Not, and Cannot, Plead Any Physical Alteration to the Insured Property

Like countless policyholder plaintiffs before them, Plaintiffs are unable to allege facts establishing a physical alteration to the subject property as a result of COVID-19. *See* Mot. 9-10 (citing *15 Oz. Fresh & Healthy Food LLC v. Underwriters at Lloyd's London*, 2021 WL 896216, at *2 (S.D. Fla. Feb. 22, 2021)). Plaintiffs attempt to address this deficiency by contending that COVID-19 "physically contaminated the surfaces and air supplies in the Plaintiffs' premises." (Opp. 5). The allegation that COVID-19 in the air, on surfaces, or being carried by an infected individual physically harms faucets, tables, computers, or other property "is a conclusory statement that does not plausibly establish physical loss or damage as defined by Florida law." *Runway 84, Inc. v. Certain Underwriters at Lloyd's, London*, 2021 WL 2767079, at *4 (S.D. Fla. Mar. 31, 2021); *see Consol. Rest. Ops., Inc. v. Westport Ins. Corp.*, Index No. 450839/2021, Hearing Tr. at 34-35 (S. Ct. N.Y. August 11, 2021) (dismissing plaintiff's complaint alleging that COVID-19 infected the air and surfaces in the restaurant).[1] "Coronavirus particle[s] damage lungs, they do not damage buildings." *Town Kitchen, LLC v. Certain Underwriters at Lloyd's, London*, 2021 WL 768273, at *10 (S.D. Fla. Feb. 26, 2021); *see Social Life Magazine, Inc.*, 2020 WL 2904834, Hearing Tr. (Caproni, J.) (coronavirus "damages lungs. It doesn't damage [inanimate objects].""); *see also R.T.G. Furn. Corp. v. Hallmark Specialty Ins. Co.*, 2021 WL 686864, at *3 (M.D. Fla.

---

[1] A copy of the Transcript from the August 11, 2011 Hearing in *Consolidated Restaurant Operations, Inc. v. Westport Insurance Corporation*, Index No. 450839/2021 is attached as Exhibit A.

Jan. 22, 2021). Florida courts—and the majority of federal courts across the country—have soundly rejected this attempt to satisfy the physical loss or damage requirement. *See Bourgier v. Hartford Cas. Ins. Co.*, Case No. 21-21053-CIV-MORENO, Order Granting Def.'s Mot. to Dismiss 8-9 (S.D. Fla. Aug. 11, 2021)[2] (citing *Town Kitchen LLC*, 2021 WL 768273, at *3-7). Accordingly, "the virus's mere presence is insufficient to trigger coverage." *Café La Trova LLC v. Aspen Specialty Ins. Co.*, 2021 WL 602585, at *8 (S.D. Fla. Feb. 16, 2021); *see Mena Catering, Inc. v. Scottsdale Ins. Co.*, 2021 WL 86777, at *7 (S.D. Fla. Jan. 11, 2021).

There is no fixture, improvement, or personal property that Plaintiffs identify as having been broken or destroyed by COVID-19 because no commercial property was damaged. One reason for this is that COVID-19 particles in the air fall to the surface and naturally expire within hours or days for lack of an animate host. Another reason is that COVID-19 particles can be easily cleaned with soap and water, Lysol wipes, or any one of over 500 disinfectants approved by the CDC on its website. Anything that can be cleaned with soap and water or Lysol wipes cannot qualify as physically altering property. *See Bourgier*, Order Granting Def.'s Mot. to Dismiss 9-10 (citing *Town Kitchen LLC*, 2021 WL 768273, at *3-7 (holding that physical contamination can be eliminated with "Lysol and a rag")); *see also Island Hotel Props., Inc.*, 512 F.Supp.3d at 1327 (citing *Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018)).

Plaintiffs have therefore failed to satisfy their threshold burden to establish coverage under the Policy and, because no amendment could remedy their deficiencies, the Court should dismiss the Complaint with prejudice.

---

[2] *See Buorgier v. Hartford Cas. Ins. Co.*, Case No. 21-21053-CIV-MORENO, Order Granting Def.'s Mot. to Dismiss 12 n.3 (S.D. Fla. Aug. 11, 2021) (citing Penn Law's Covid Coverage Litigation Tracker, which identifies 320 federal district court COVID-19 cases dismissed with prejudice, 33 cases dismissed without prejudice, 5 partial dismissals with prejudice, and 22 where motions to dismiss were denied). A copy of the Order is attached as Exhibit B.

### B. PLAINTIFFS FAILED TO MEET THEIR BURDEN TO ESTABLISH COVERAGE UNDER THE COMMUNICABLE DISEASE PROVISION

National Surety moved to dismiss Plaintiffs' claim for coverage under the Policy's Communicable Disease Provision (the "CD Provision") because Plaintiffs failed to plead facts sufficient to show both (1) physical loss or damage to property and (2) a "communicable disease event" as defined in the Policy. (Mot. 22-23.) In opposition, Plaintiffs argue that the CD Provision should not require a showing of physical loss or damage because, in that case, it would be illusory. (Opp. 12.) Plaintiffs further argue that they have adequately alleged a "communicable disease event" and, if not, the Court should still grant coverage to Plaintiffs anyway as a matter of public policy.  Plaintiffs' arguments are without merit.

#### 1. The Communicable Disease Provision is Not Rendered Illusory By Requiring a Showing of Physical Loss or Damage

Plaintiffs contend that the Court should ignore the express "physical loss or damage" requirement in the Policy's CD Provision because if a virus can never cause physical damage, then the CD Provision is meaningless. (Opp. At 12-13.)

By its very terms, however, the CD Provision does not cover physical loss or damage caused by a communicable disease (including a virus) *itself* as Plaintiffs suggest. (*See* Mot. Ex. A-1 § V.F.1.) Rather, the CD Provision provides coverage for "direct physical loss or damage to Property Insured caused by or resulting from a covered communicable disease *event*," as defined by the Policy. (*Id.* (emphasis added).) In other words, the CD Provision covers physical damage sustained when complying with an order from the public health authority to evacuate, decontaminate, or disinfect property due to the outbreak of a communicable disease at the insured location. (*Id.*).

Such a "communicable disease event" might occur, for example, if a Legionnaires' outbreak were traced to a wing of Plaintiffs' hotel and the health department required the

evacuation of all guests and employees while the wing was decontaminated. Coverage under the CD Provision might then be established if the hotel's HVAC systems and/or plumbing needed to be torn out and repaired or replaced to facilitate a reopening of the wing. Since the CD Provision also can cover loss of business income "during the period of restoration" of the physical damage incurred as a result of the communicable disease event, (Mot. Ex. A-1 § V.F.1(a)(2).), the income lost during the evacuation and property repair/replacement also might be recoverable. Consequently, the coverage provided by the CD Provision is not illusory; it simply does not apply in the absence of physical loss or damage, as is the case here.

### 2.   Plaintiffs Failed to Allege Facts Sufficient to Show a "Communicable Disease Event" as Defined by the Policy

Even if Plaintiffs could sufficiently allege "physical loss or damage" caused by COVID-19 (which they cannot), the Policy's CD Provision still does not apply because Plaintiffs fail to allege facts sufficient to show the presence of a "Communicable Disease Event" ("CDE"). (Mot. 22-23.) A CDE occurs when the "governmental authority having jurisdiction over [the insured's] operations relative to health and hygiene standards necessary for the protection of the public" orders that the insured's property be "evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease" at the insured property. (Compl. ¶44(2); Mot. Ex. A-1 §§ XIV.11, XIV.A.59.) For hotels and lodging establishments, the relevant government authority is the Division of Hotels and Restaurants of the Florida Department of Business and Professional Regulation. *See* Fla. Stat. § 509.032; Fla. Stat. § 509.0132. The City Mayor, which issued the Emergency Orders referenced in the Complaint, is not a "public health authority" within the definition of the Policy.

But, even if the Mayor were, the Emergency Orders that Plaintiffs rely upon did not specifically order any of their properties to be "evacuated, decontaminated, or disinfected" due to

an outbreak of COVID-19 at any of those properties.[3] (*See* Mot. Ex. A-1 §§ V.F.1, XIV.A.11.) Without citing to any allegations in the Complaint, Plaintiffs argue that the Mayor's Orders effectively "evacuated" the property. (Opp. 15-16.) That is not the case. As Plaintiffs' own sources indicate, "evacuation" is commonly used to show a complete exodus from an imminent hazard such as "to evacuate the inhabitants of towns in the path of a flood;"[4] or "children were evacuated from London to escape the bombing."[5] Those examples are a far cry from the Emergency Orders, which did not require any inhabitants of the hotels or restaurants to evacuate the premises. To the contrary, the Emergency Orders permitted Plaintiffs to remain open to existing guests and to provide future lodging to essential workers. (*See* Mot. Ex. C (requiring that hotels decline "new reservations for persons other than Essential Lodgers")). The Order did not require decontamination or disinfectant of any property. Consequently, Plaintiffs' reliance upon the Emergency Orders does not help it demonstrate a CDE, as required by the Policy.

Instead, Plaintiffs allege that the Emergency Orders merely caused a "decrease in reservations." (Compl. ¶33.) But the Policy does not cover the unfortunate loss of business that Plaintiffs allege to have suffered as a result of the government limitations requiring other patrons to stay at home. *See Northwell Health, Inc. v. Lexington Ins. Co.*, 2021 WL 31339991, at *8 (S.D.N.Y. July 25, 2021) (holding that hospital was not entitled to communicable disease coverage under commercial property insurance policy). At bottom, Plaintiffs' public policy argument does cannot alter the plains terms of the Policy. *See Social Life Mag., Inc.*, 2020 WL 2904834, Tr.

---

[3] Plaintiffs conflate the requirements for Civil Authority Coverage with those for CD Coverage. (*See* Opp. 15.) National Surety does not contend that the CD Provision requires that the authority prohibit access to the property—although that *is* what is required for Civil Authority Coverage, which Plaintiffs do not address in their Opposition. (*See* Mot. Ex. A-1§ V.E.2.) Rather, the CD Provision requires exactly what its unambiguous terms provide: evacuation, decontamination, or disinfection of the insured property. (*See* Mot. Ex. A-1 §§ V.F.1, XIV.A.11.)
[4] Dictionary.com, available at: https://www.dictionary.com/browse/evacuate.
[5] Oxford Dictionary, available at www.oxfordlearnersdictionaries.com/us/definition/english/evacuate

(expressing sympathy for plaintiff, but enforcing clear New York law requiring some damage to the property to be entitled to commercial property insurance).

### C. PLAINTIFFS' EXPERT REPORTS ARE IMPERMISABLE AND DO NOT CURE THE DEFICIENCIES IN THE COMPLAINT

#### 1. The Court Should Not Consider the Expert Reports Because They are Extraneous to the Complaint

First, the Court should not consider the expert reports or Plaintiffs' reiteration of the reports in their statement of facts as a procedural matter. "A motion to dismiss under Rule 12(b)(6) 'presents a pure legal question, based on allegations contained within the four corners of the complaint.'" *McMillan v. New York State Bd. Of Elections*, 2010 WL 4065434, at *4 (E.D.N.Y. Oct. 15, 2020) (internal citation omitted). "When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 977 F.2d 142, 150 (2d Cir. 1993); *see Shih v. Petal Card, Inc.*, 2019 WL 11276687, at *1 (S.D.N.Y. Aug. 21, 2019) (holding that the document must be "integral to the complaint and relied upon by the [p]laintiff in framing the complaint" to be considered). "[D]ocumentary evidence, such as facts contained in an expert report, generally will have no bearing on the trial judge's consideration of the 'pure legal question' before it." *Jannazzo v. United States*, 2016 WL 1452392, at *4 (E.D.N.Y. Apr. 13, 2016) (citing *McMillan*, 2010 WL 4065434, at *4); *see Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

Here, Plaintiffs' Expert Reports are not within the four corners of the Complaint. Plaintiff did not serve its Expert Reports until after National Surety had already moved to dismiss the Complaint (ECF No. 18-19) and thus could not have relied upon the reports in framing the

Complaint because the reports did not exist yet (Opp. Exs. A-B (dated July 10, 2021)). Most importantly, however, Plaintiffs prepared and served the Expert Reports after the Court ordered a stay of all discovery (ECF No. 20). Consequently, it would be inappropriate for the Court to consider the Expert Reports for any purpose.[6] (*See* ECF No. 20.)

### 2. The Expert Reports are Otherwise Inadmissible

The Court should not consider Plaintiffs' Expert Reports because they are otherwise inadmissible. Sulzinski's Report, which opines on the alleged physical loss or damage sustained at Plaintiffs' Setai Hotel resulting from COVID-19, is—in its entirety—an impermissible legal conclusion. *See Kuebel v. Black & Decker (U.S.) Inc.*, 2010 WL 1930659, at *15-16 (W.D.N.Y. May 12, 2010) (excluding expert report on summary judgment for framing opinions as legal conclusions), *rev'd on other grounds*, 643 F.3d 352 (2d Cir. 2011); *see also Secs. & Exch. Commission v. Am. Growth Funding II, LLC*, 2019 WL 1772509, at *1 (S.D.N.Y. Apr. 23, 2019). Aravkin's Report opines that "COVID-19 was prevalent in Miami-Dade county around the time of the Emergency Order issued on March 26th," which Plaintiffs rely on in their Complaint. (Opp. Ex. B at 1.) But, whether COVID-19 existed in Miami-Dade county during the global pandemic is irrelevant to the legal question before the Court. The number of cases of COVID-19 in the county in which Plaintiffs' properties are located does not at all demonstrate either physical loss or damage to property or the presence of a CDE at Plaintiffs' specific property. Aravkin's Report is, therefore, irrelevant. *See, e.g.*, *Secs. Inv. Protection Corp. v. Bernard L. Madoff Invest. Secs. LLC*, 581 B.R. 370, 380 (S.D.N.Y. Dec. 22, 2017) (excluding irrelevant portions of expert report).

---

[6] Should the Court consider Plaintiffs' Expert Reports notwithstanding the existing Order staying discovery, National Surety respectfully requests the opportunity to fully brief all of its objections to Plaintiff's Expert Reports.

### 3. If Considered, Plaintiffs' Expert Reports Do Not Support Plaintiffs' Claims

In any event, the Expert Reports harm Plaintiffs' case more than they help it. For example, Sulzinski opines that "[l]ike many other threats to human health and life (for example, formaldehyde, radioactivity, carbon monoxide), SARS-CoV-2 *does not physically alter the surfaces on which it settles*." (Opp. 5 (quoting Ex. A, Sulzinski Report at 2).) Under the applicable law, this admission in and of itself is fatal. Sulzinski also argues that COVID-19 causes "physical loss" because it is "present in droplets and aerosols suspended in the air," which renders the property "dangerous and substantially unstable." (Opp. Ex. A, Sulzinski Report 2.) As discussed in Section A.2 *supra*, Florida Courts and others around the country have uniformly held otherwise as a matter of law.

## III. CONCLUSION

Plaintiffs fail to state a plausible claim upon which relief may be granted and cannot cure their pleading deficiencies by amendment. Accordingly, National Surety respectfully requests that the Court grant National Surety's Motion to Dismiss with prejudice.

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Dated: August 16, 2021 | */s/ Anna K. Finger*<br>**DLA PIPER LLP (US)** |
|  | Michael D. Hynes<br>Anna K. Finger<br>1251 Avenue of the Americas<br>27th Floor<br>New York, NY 10020<br>Tel: (212) 335-6474<br>michael.hynes@us.dlapiper.com<br>anna.finger@us.dlapiper.com |
|  | *Attorney for Defendant*<br>*National Surety Corp* |

**CERTIFICATE OF SERVICE**

I certify that on August 16, 2021, a copy of the foregoing document was served on all counsel of record via the Court's ECF system and/or email.

*/s/ Anna K. Finger*
*Attorney for Defendant*